COMMONWEALTH *vs.* ANGELO ROSSETTI
(and a companion case).

Suffolk.    October 4, 1965. — November 18, 1965.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL,
& REARDON, JJ.

*Search and Seizure. Arrest. Constitutional Law,* Search and seizure, Equal protection of laws.

An application by a police captain for a search warrant for illegal gaming implements at certain private premises did not sufficiently disclose the underlying facts showing probable cause to justify issuing the warrant where the applicant merely stated that "An F.B.I. agent has informed me that . . . [a named person] is receiving unauthorized race result information at . . . [the premises] . . . obtained by an electronic device at . . . [a dog track] and thence transmitted to bookmakers . . . . Further, that a former employee of . . . [the named person] who was engaged in the transmission of race results is again actively engaged in the transmission of race results with . . . [him]. Further, . . . [the named person] has been convicted of federal and state gaming offenses and bookmaking and it is believed that he, with others unknown at this time, are engaged in the activity of accepting bets on horse and dog races." [632–633]

Where it appeared in a criminal case merely that a police captain had been informed by an F.B.I. agent that the defendant was receiving and transmitting to bookmakers "unauthorized race result information," that the captain knew that the defendant had a reputation of being involved in gaming activities and had a criminal record, and that when the captain and other officers, after an invalid search warrant for certain premises had been obtained, went to such premises they observed through an open window a man sitting at a table with a telephone in his hand, there was no ground for a reasonable conclusion by the officers that the defendant, whom they found sitting at the table on entering the premises, was guilty of any specific commission of the felony of violating G. L. c. 271, § 31A, nor probable cause for his then being arrested without a warrant, and seizure of gaming materials found on the premises was not lawful as incidental to such arrest.   [633–634]

A defendant charged with unlawful transmission of racing information in violation of G. L. c. 271, § 31A, had standing to invoke the protection of the Fourth and Fourteenth Amendments of the Federal Constitution against an unlawful search of premises owned by another where it appeared that the defendant at the time of the search had been present on the premises as an agent of or joint venturer with the owner and that the defendant had also been indicted for conspiracy with the owner to transmit such information.   [634–635]

G. L. c. 271, § 31A, as applied to a defendant charged with transmitting racing information in furtherance of unlawful gambling, would not deny him the equal protection of the laws by reason of the provision thereof that it should not be construed as prohibiting newspapers or television or radio stations from communicating such information as news.   [635]

COMPLAINT received and sworn to in the Municipal Court of the City of Boston on August 18, 1964.

INDICTMENT found and returned in the Superior Court on October 9, 1964.

Upon appeal to the Superior Court in the first case, motions to suppress were denied by *Lurie, J.,* who reported certain questions of law.

*Joseph J. Balliro* for the defendants.

*Jack I. Zalkind,* Assistant District Attorney (*Robert Snider,* Legal Assistant to the District Attorney, with him), for the Commonwealth.

CUTTER, J.   On July 31, 1964, a Boston police captain made written applications for two warrants to search premises at 37–41 Rutland Street, Boston.  The information furnished in the application for one warrant to search for gaming implements (G. L. c. 271, § 23, as amended through

St. 1953, c. 319, § 30)[1] and the facts stated in the applica-
tion for the other warrant (G. L. c. 276, § 2B, inserted by
St. 1964, c. 557, § 3)[2] are set out in the margin.

After obtaining these warrants, the captain and other
officers "went to . . . 37–41 Rutland Street. These prem-
ises consisted of the offices of a newspaper . . . company
. . . owned and operated by . . . Shibley [a defendant in
the companion case]. Two officers went to . . . [No.] 41.
The remaining officers, including [the] [c]aptain . . . , went
to . . . [No.] 37. As the two officers approached the door
numbered 41, they observed through an open window a man
sitting at a table with a telephone in his hand. . . . With-
out announcing their authority or purpose the two officers,
using a [b]attering [r]am, forced the door and entered the
premises."

The defendant Rossetti, "who was sitting at the table,
turned and faced the police officers. . . . [O]n the table at
which he was sitting, were seven telephones and numerous
sheets of paper." Writings on the papers indicated racing
results, wagers on horse races, and lottery bets. "Rossetti
was ordered away from the table; and the telephones . . .
were monitored for in-coming phone calls," which revealed
inquiries concerning racing results.

"Shibley . . . identified himself as the owner and opera-
tor of the . . . [c]ompany, and indicated that he was in
control of the premises. The police officers seized . . .
various articles and papers," which are "the subject mat-
ters of . . . [m]otion[s] to [s]uppress," mentioned below.

---

[1] In the application for this warrant, the captain wrote, "An FBI agent
has informed me that one Munge Rossetti (Angelo M.) is receiving unauthor-
ized race result information at 37–41 Rutland Street, Boston, said information
being obtained by an electronic device at Wonderland Dog Track and thence
transmitted to bookmakers in Greater Boston. Further, that a former em-
ployee of Rossetti's who was engaged in the transmission of race results is
again actively engaged in the transmission of race results with Rossetti. Fur-
ther, Rossetti has been convicted of federal and state gaming offenses and
bookmaking and it is believed that he, with others unknown at this time, are
engaged in the activity of accepting bets on horse and dog races."

[2] The captain said in applying for the second warrant, "I have information,
based upon the following: That an FBI agent has informed me . . . [then
followed essentially the balance of the first two sentences of the first applica-
tion for warrant quoted above (fn. 1). Only its last sentence was omitted.]."

In the Municipal Court, Rossetti was convicted of transmitting racing information during the running of a race, knowing that it was to be used for unlawful gaming. He appealed to the Superior Court. On October 9, 1964, Rossetti and Shibley were indicted for conspiracy to transmit such information in furtherance of unlawful gaming. Rossetti and Shibley then each filed in each case a motion to suppress the evidence seized and for its return on the ground that it was taken "without a valid search warrant."

The captain testified, at the hearing on the motions to suppress that, prior to entering the premises, he knew that Rossetti had a criminal record as a bookmaker and for violations of the Federal tax stamp wagering law; that he "had been under rendition proceedings from . . . Florida in connection with a racing wire service"; and that he "had been named in a Crime Commission [r]eport . . . [as important] in race wire dissemination."

A "police officer . . . [who] forced the door . . . testified . . . that his decision [not] to . . . announce his presence, purpose, or authority was based upon his desire to prevent any attempt to destroy evidence. In fact, there were no circumstances to indicate that an attempt was made to destroy evidence."

Each motion was denied. The trial judge then, under G. L. c. 278, § 30A, made an interlocutory report of two questions of law, viz. (1) "[w]hether . . . the search and seizure . . . was legal," and (2) whether G. L. c. 271, § 31A (inserted by St. 1964, c. 330) is[3] "[c]onstitutional."

1. The defendants contend that the applications did not set forth facts adequate to show reasonable grounds for a search and that consequently the warrants were improperly

---

[3] Section 31A reads, "Whoever transmits the results of a race, or information as to the progress of a race during the running thereof, in a racing meeting as defined in . . . [G. L. c. 128A, § 1] to another knowing that such results or information is to be used or intended to be used for unlawful purposes or in furtherance of unlawful gambling, shall be punished by a fine of not more than five thousand dollars or by imprisonment in a jail . . . for not more than two and one half years or in the state prison for not more than five years, or by both such fine and imprisonment. This section shall not be construed as prohibiting a newspaper from printing such results for publication as news, or a television or radio station from telecasting or broadcasting such results or information as news."

issued.  They also assert that, because of the invalidity of
the warrants, the evidence obtained by their use was il-
legally seized, and thus must be suppressed.

In only a few Massachusetts cases decided since *Mapp* v.
*Ohio,* 367 U. S. 643, 655–660, has this court considered
whether a warrant was improperly issued and whether evi-
dence procured by its use was illegally obtained.  In *Com-
monwealth* v. *Lepore, ante,* 121, 122–123, it was held that
adequate grounds for issuing a search warrant had been
presented to the judge who issued it.  There had been a
more complete statement to the judge than appears in
the present cases.  In *Commonwealth* v. *Lillis, ante,* 422,
423–424, we held adequate very full recitals of under-
lying facts, concerning (a) identifications of the suspects,
(b) three bullets recovered near places where identified
suspects had been, and (c) ballistic tests of these bullets.[4]
We have recently held in *Commonwealth* v. *Dias, ante,* 583,
584, following decisions of the Supreme Court of the
United States mentioned below, that an application is in-
adequate if based merely upon the affiant's belief, without
statement of the facts supporting that belief.  See *Com-
monwealth* v. *Laudate,* 345 Mass. 169, 171.  See also *Com-
monwealth* v. *Jacobs,* 346 Mass. 300, 303, 307–308.

The Supreme Court of the United States has held that
the Fourth Amendment's ''proscriptions [against unrea-
sonable searches and seizures] are enforced against the
States through the Fourteenth Amendment'' and that ''the
standard of reasonableness is the same under the Fourth
and Fourteenth Amendments.''  See *Ker* v. *California,*
374 U. S. 23, 33.  Although the *Ker* case did not involve a

---

[4] We there said, ''While a warrant may issue only upon a finding of 'prob-
able cause' this . . . means less evidence than would justify a finding of guilt
and the finding may rest upon evidence, such as hearsay, not legally competent
in a criminal trial, but there must be some support for the affiant's belief in
the credibility of the informant and the reliability of the information.''  We
also said, ''It is unnecessary to determine how far information had by the
judge who granted the warrant, as shown at the hearing on the motion to
suppress, but not shown by the warrant, the application, and the affidavit, may
be considered in determining the validity of the warrant.''  The present rec-
ord does not indicate that more than the contents of the written application
were submitted to the judge.

search under a warrant, the decision has made it necessary for the State courts, in the adjudication of criminal cases, to apply the "fundamental criteria" of the Fourth Amendment in determining whether particular searches and seizures are reasonable.

In *Aguilar* v. *Texas,* 378 U. S. 108, the Supreme Court reviewed a State search warrant issued upon an application stating merely that the applicants "have received reliable information from a credible person and do believe that . . . narcotics . . . are being kept at the . . . described premises for the purpose of sale and use contrary to . . . law." The court held (at pp. 115–116) "that the search warrant should not have been issued because the affidavit did not provide a sufficient basis for a finding of probable cause and that the evidence obtained as a result of the search warrant was inadmissible."

In reaching this conclusion, the opinion said (at pp. 113–114), "Here the 'mere conclusion' that [the] petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit . . . not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' it does not even contain an 'affirmative allegation' that the affiant's unidentified source 'spoke with personal knowledge.' For all that appears, the source here merely suspected, believed or concluded that there were narcotics in [the] petitioner's possession. The magistrate here certainly could not 'judge for himself the persuasiveness of the facts relied on . . . to show probable cause.' He necessarily accepted 'without question' the informant's 'suspicion,' 'belief,' or 'mere conclusion.' Although an affidavit may be based on hearsay . . . and need not reflect . . . direct personal observations of the affiant . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and . . . from which the officer concluded that the informant, whose identity need not be disclosed . . . was 'credible' or his information 'reliable.' "

Commonwealth v. Rossetti.

On the other hand, in *United States* v. *Ventresca,*
380 U. S. 102, 109–112, the court sustained[5] the propriety
of a warrant issued upon a careful application and affidavit
set out in full (at pp. 112–116). The affidavit described
surveillance of various persons and the premises searched
over a period of nine or more days and various incidents
observed suggesting criminal conduct. The affidavit was
stated to be based on observation of the affiant and reports
made to him by other Internal Revenue Service investiga-
tors. See *Giordenello* v. *United States,* 357 U. S. 480, 486.
Cf. *Chin Kay* v. *United States,* 311 F. 2d 317, 320–322 (9th
Cir.).

The foregoing decisions establish the necessity of in-
cluding in the application for a warrant the underlying
facts which show probable cause, and not simply general
conclusions inferred from those facts. Each of the appli-
cations before us (fns. 1, 2) reveals that it is based in major
part upon a hearsay report from an F.B.I. agent. Even
if the reference to that agency might be sufficient to estab-
lish the reliability of the informant, the applications con-
tain no indication of the basis (a) of the F.B.I. agent's
knowledge of the facts reported by him, or (b) of his con-
clusion that racing information was being transmitted, or
(c) of the applicant's knowledge of the then current activi-
ties of Rossetti and his employee. There is no description
of any surveillance of Rossetti or his associates by the ap-
plicant or others. The applications do not place before the
issuing magistrate basic facts sufficient to permit him to
determine for himself whether probable cause existed.

A majority of the court are of opinion that the appli-

---

[5] We recognize that, in the *Ventresca* case (pp. 108–109), the court said
that "affidavits for search warrants . . . must be tested and interpreted . . .
in a commonsense and realistic fashion," and that the interpretation of
affidavits should not be "hypertechnical." The court, however, repeated
essentially the requirements of the *Aguilar* case, and said, "Recital of some
. . . underlying circumstances . . . is essential if the magistrate is . . . not
[to] serve merely as a rubber stamp for the police." The opinion pointed
out (p. 109) that "doubtful . . . cases in this area should be largely deter-
mined by the preference to be accorded to warrants" for it recognized
(p. 108) that the courts should not "discourage police officers from sub-
mitting their evidence to a judicial officer before acting."

cations, although somewhat more informative than those in the *Aguilar* case, do not meet the standards laid down by the Supreme Court of the United States.[6] This is so even if (as reviewing courts should do where there has been police effort, in good faith, to comply with procedural requirements) we disregard insubstantial errors and make every reasonable allowance for the difficulties and pressures under which law enforcement officers must work. See the *Ker* case, 374 U. S. 23, 33–34, and the *Ventresca* case, 380 U. S. 102, 109 (fn. 5).

2. The Commonwealth contends that the search and seizure were incidental to an arrest (see *United States* v. *Rabinowitz*, 339 U. S. 56, 60; *Abel* v. *United States*, 362 U. S. 217, 234–238) for a felony,[7] for which arrest without a warrant was authorized if the arresting officer had reasonable cause to believe that the person arrested had committed a felony. See *Commonwealth* v. *Holmes*, 344 Mass. 524, 525. In considering whether probable cause existed, we may take into account the facts shown by the record to have been known to the arresting captain when the search warrants were served in addition to those stated in the applications for the warrants. These additional facts amount to little more than knowledge that Rossetti had a criminal record and a reputation of being involved in gaming activities. These facts may be significant in connection with other basic facts but, standing alone, are of slight importance in establishing probable cause. As to the officers' observations of Rossetti before they entered to search the prem-

---

[6] It is significant that the Massachusetts Legislature has recently required that applications for search warrants be more informative than under the earlier practice. See G. L. c. 276, §§ 1, 2, 2A, 2B, as amended or inserted by St. 1964, c. 557, §§ 1–3. Section 2B requires that an "affidavit shall contain the facts, information, and circumstances upon which . . . [the applicant] relies to establish sufficient grounds for the issuance of the warrant." Similarly informative applications are appropriate under G. L. c. 271, § 23, as amended through St. 1953, c. 319, § 30, notwithstanding the absence of § 23 from the list of statutes referred to in c. 276, § 2C (as inserted by St. 1964, c. 557, § 3) under which the procedure for the issuance of warrants is to follow that laid down by §§ 2, 2A, and 2B.

[7] The offence created by G. L. c. 271, § 31A (see fn. 3), may be punished by imprisonment in the State prison for not more than five years, and thus is a felony. See G. L. c. 274, § 1.

ises, the record shows merely that the police observed a man sitting at a table holding a telephone.

In the aggregate, all the circumstances set out in the report do not amount to probable cause for arrest, nor do they show that the officers knew basic facts sufficient to permit them reasonably to conclude that Rossetti was or had been violating G. L. c. 271, § 31A, on some specific occasion or occasions. Indeed, the record suggests, not that the search was incident to a lawful arrest, but rather that the arrest was incident to a search under invalid warrants. See *Johnson* v. *United States,* 333 U. S. 10, 15–17. Cf. *United States* v. *Harris,* 321 F. 2d 739, 741–742 (6th Cir.).[8]

3. There is no occasion for us to consider whether there was an illegal search for the additional reason, urged by the defendants, that entrance to the searched premises was made by force without prior announcement of the existence of the warrants and of the purpose of the search. See *Ker* v. *California,* 374 U. S. 23, 37–41, 44–46, 47.[9] See also *Miller* v. *United States,* 357 U. S. 301, 306–310; *Masiello* v. *United States,* 304 F. 2d 399, 401 (Ct. App. D. C.). As to the significance of the fear of destruction of evidence as justifying omission of any warning before a forcible entry, see *People* v. *Maddox,* 46 Cal. 2d 301, 304–307; Blakey, The Rule of Announcement and Unlawful Entry, 112 U. of Pa. L. Rev. 499.

4. Rossetti has been indicted for conspiracy with Shibley to transmit racing information unlawfully. The record warrants the conclusion that Shibley owned the searched premises. There is no suggestion that Rossetti was a tres-

---

[8] We recognize, of course, that G. L. c. 271, § 23, as amended, provides for a warrant which authorizes a search of premises used for gaming and also (if gaming apparatus is found) the arrest of persons operating the premises or found there as participating in any form of gaming. See *Commonwealth* v. *McDermott,* 347 Mass. 246, 249. The warrants before us, however, were issued on an application insufficient to justify a search warrant and equally insufficient to justify a warrant for an arrest.

[9] The Massachusetts cases which mention the problem may have had no occasion to decide the precise issue. See *Banks* v. *Farwell,* 21 Pick. 156, 159–160; *Barnard* v. *Bartlett,* 10 Cush. 501, 503; *Jacobs* v. *Measures,* 13 Gray, 74, 75; *McLennon* v. *Richardson,* 15 Gray, 74, 77; *Commonwealth* v. *Reynolds,* 120 Mass. 190, 196; *Commonwealth* v. *Phelps,* 209 Mass. 396, 407–408.

passer on the premises when the search was made. On the contrary, the most reasonable inference is that he was there as Shibley's agent or as a joint venturer with Shibley. Accordingly, he had sufficient standing, at least because claiming through Shibley and in Shibley's interest, to invoke the protection of the Fourth Amendment against an unlawful search of Shibley's premises. *Jones* v. *United States,* 362 U. S. 257, 261–267. See *Ker* v. *California,* 374 U. S. 23, 34. See also *People* v. *Martin,* 45 Cal. 2d 755, 760–761.

5. At the arguments, counsel for the defendants in effect waived any contention that G. L. c. 271, § 31A (fn. 3), is invalid because of the exemption from its penal provisions of newspapers and other news media. The concession by counsel was proper. The exemption of the ordinary transmission of news for general public consumption from these penal provisions is a reasonable legislative classification of substantially differing types of communication and conduct. If applied in this case, § 31A would not deny to defendants the equal protection of the law. *Lindsley* v. *Natural Carbonic Gas Co.* 220 U. S. 61, 78–79. *Ferguson* v. *Skrupa,* 372 U. S. 726, 732–733. See *Telephone News Sys. Inc.* v. *Illinois Bell Tel. Co.* 220 F. Supp. 621, 638–640 (N. D. Ill.), affd. 376 U. S. 782; *United States* v. *Borgese,* 235 F. Supp. 286, 295–296 (S.D. N.Y.). See also *Kelly* v. *Illinois Bell Tel. Co.* 325 F. 2d 148, 151–153 (7th Cir.); *Parkes* v. *Judge of Recorder's Court,* 236 Mich. 460, 467–469, where a somewhat similar statute containing no exemption of news media was held invalid largely because of the absence of such an exemption.

6. The questions raised by the report are to be answered: *First,* upon the reported facts the search in these cases was based upon improperly issued warrants and was illegal. *Second,* General Laws c. 271, § 31A, if applied to communications of the type indicated by the present record as having been made by the defendants, would not deny to persons in the defendants' position the equal protection of the laws.

*So ordered.*