COMMONWEALTH *vs.* LEWIS R. POPE

(and a companion case between the same parties).

Hampden.    October 7, 1968. — October 30, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Search and Seizure.    Arrest.    Constitutional Law,* Search and seizure.

An affidavit by a police officer presented in support of an application for a search warrant under G. L. c. 271, § 23, for illegal gaming implements at certain premises set out the "underlying circumstances" from which an unidentified informant drew conclusions of illegal activity at the premises which he recounted to the affiant and another police officer, and statements in the affidavit concerning the observations of such police officers while the premises were "under investigation and surveillance" by them for a period of about four months established the credibility of the informant and the reliability of the information he gave them, and the affidavit showed probable cause for the issuance of the warrant as required by the Fourth Amendment of the United States Constitution and G. L. c. 276, § 2B.  [628]

Reading together a complaint for a search warrant specifying "rooms in the first story and basement of " a numbered and described building on a specified street in a city, "which said rooms are occupied by . . . [a named] eating place operated by" a named person, and the warrant, to which the complaint was physically attached and of which it was a part and pursuant to which officers entered the rooms, it was held that there was a description of the place to be searched adequate to satisfy G. L. c. 276, § 2, the Fourth Amendment of the United States Constitution, and art. 14 of the Declaration of Rights of the Massachusetts Constitution, although the warrant itself referred only to "the rooms mentioned in the . . . complaint."  [629]

In criminal proceedings for violation of G. L. c. 271, §§ 7, 17A, on evidence that pursuant to a valid search and arrest warrant authorized by § 23, a police officer entered the premises described in the warrant and observed the defendant in a telephone booth talking on the telephone with a notebook in his hand, that on the floor near the booth the officer

found a slip of paper containing some numbers, and that, as the defendant stepped out of the booth, the officer "slipped this book out of his hand and placed him under arrest," it was held that the arrest was lawful, and that a search of the premises incidental to the arrest was lawful. [629–630]

COMPLAINTS received and sworn to in the District Court of Springfield on November 21, 1964.

On appeal to the Superior Court motions to suppress and to dismiss the complaints were denied by *Ponte*, J., and the trial was before him.

*Henry E. Quarles* for the defendant.

*Leonard E. Gibbons*, Assistant District Attorney, for the Commonwealth.

SPALDING, J. Verdicts of guilty were returned against the defendant on two complaints. In one, the defendant was charged with setting up and promoting a lottery (G. L. c. 271, § 7); in the other, with using telephones for the purpose of accepting wagers and bets upon the lottery called the numbers game (G. L. c. 271, § 17A).

Before the trial commenced the defendant presented motions to suppress and motions to dismiss the complaints. The motions were denied, subject to the defendant's exceptions. The question presented by the motions was whether certain evidence ought to have been suppressed on the ground that it was obtained in violation of the defendant's rights under the Fourth Amendment to the United States Constitution and art. 14 of our Declaration of Rights; there was the additional ground that the evidence was obtained in violation of G. L. c. 276, §§ 2, 2A, and 2B.

Evidence introduced by the Commonwealth at the trial included the following: On November 20, 1964, Springfield police officers, pursuant to a search warrant, entered the premises known as The Rib City Barbecue. The officers entered the premises in two groups. One entered through the front door, and the other through the rear door. One of the officers observed the defendant in a telephone booth talking on the telephone with a notebook in his hand. On

the floor near the booth the officer found a slip of paper containing some numbers. As the defendant stepped out of the booth, the officer "slipped this book out of his hand and placed him under arrest." The notebook, according to the officer, "contained a record of play reported by the agents for several weeks." From another sheet obtained in the search the officer was able to "determine the agents' percentage which usually ran from 20 to 25 percent of the take." Other officers found slips of paper on the premises which in their opinion were memoranda of the sort used in number pool operations.

1. The first ground in the motions to suppress is that the affidavit on which the search warrant is based failed to show probable cause.[1] Search warrants may be issued under G. L. c. 271, § 23, for violations of the gaming laws. The information to be furnished in obtaining such a warrant should be of the sort to satisfy the standard set forth in G. L. c. 276, § 2B. This is so despite the fact that G. L. c. 271, § 23, is not included among the statutes listed in § 2C under which the procedure set forth in §§ 2, 2A and 2B of c. 276 shall control as far as applicable. See *Commonwealth* v. *Rossetti*, 349 Mass. 626, fn. 6, at p. 633; *Commonwealth* v. *Dias*, 349 Mass. 583, 584. The defendant contends that the affidavit did not contain the showing of probable cause which is required by the Fourth Amendment and by G. L. c. 276, § 2B.[2]

---

[1] The relevant portions of the affidavit are as follows: "The above premises have been under investigation and surveillance by myself and Off. D. Tighe, for a period of about four months. It has a constant flow of traffic (foot) in and out during the period between 10:00 A.M. and 3:00 P.M. many of the men entering are known to us as book-makers and other gamblers. Lewis Pope, (reported to be the top man in the numbers racket in the hill section of the city) is there daily and stays most of the day. A very reliable informer stated to us that the people coming in give number action to Pope and he hides it on the premises and every so often he makes a telephone call and gives out all of the bets he has. This informant has been in there on many occasions and witnessed this going on. He also stated that they usually have a crap game going on the premises. On the basis of this information from the informant and my own observations and investigations, I feel I have probable cause to believe and in fact I do believe that the above named premises are being used for an illegal gaming and book-making operation."

[2] General Laws c. 276, § 2B, provides in part that the affidavit "shall contain the facts, information, and circumstances upon which such person

Although hearsay may be the basis for a warrant (*Jones* v. *United States* 362 U. S. 257, 271) the "magistrate must be informed of some of the underlying circumstances from which the informant . . . [drew his conclusions], and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was 'credible' or his information 'reliable.'" *Aguilar* v. *Texas*, 378 U. S. 108, 114. *Commonwealth* v. *Monosson*, 351 Mass. 327, 329.

The affidavit here was sufficient to support the issuance of the warrant. The affidavit sets out the "underlying circumstances" from which the informant drew his conclusions. The defendant, however, maintains that the affidavit does not show the credibility of the informant or the reliability of his information. It is true that the characterization of the informer as being "very reliable" does not satisfy the requirements laid down in the *Aguilar* case or in our decisions. *Commonwealth* v. *Maneatis*, 350 Mass. 780. *Commonwealth* v. *Monosson*, 351 Mass. 327, 329. But the statements in the affidavit concerning the observations of the police officers were sufficient to establish the credibility of the informant and the reliability of the information he gave the officers. *Commonwealth* v. *Cuddy*, 353 Mass. 305, 308–309. Compare *Commonwealth* v. *Rossetti*, 349 Mass. 626, 632, where the court pointed out that the affidavit did not indicate that Rossetti had been under police surveillance.

2. The second ground set forth in the motions to suppress is that the warrant does not sufficiently describe the place to be searched. Under G. L. c. 276, § 2, a search warrant "shall designate and describe the building, house, place, vessel or vehicle to be searched and shall particularly describe the property or articles to be searched for." This requirement is similar to the command of the Fourth Amendment that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place

relies to establish sufficient grounds for the issuance of the warrant." The affidavit must describe the "source, facts indicating reliability of source and nature of information."

to be searched, and the persons or things to be seized." Likewise under art. 14 of our Declaration of Rights the "order in the warrant . . . [must be] accompanied with a special designation of the persons or objects of search, arrest, or seizure . . . ." Such particularity is necessary in order to identify the place to be searched and the things to be seized; it both defines and limits the scope of the search and seizure, thereby protecting individuals from general searches, which was the vice of the pre-Revolution writs of assistance.

The warrant itself refers only to "the rooms mentioned in the above complaint." But the complaint contained the following description: The "rooms in the first story and basement of the building situated on Eastern Avenue, and numbered seventy-four (74) on said street, in said Springfield, to wit, — in the one story cinder block and wood frame building at said address which said rooms are occupied by the Rib City Barbecue eating place operated by one Willie Orr." Clearly this was a sufficient description. The question is whether it can be relied on to support the validity of the warrant. We are of opinion that it can be. It was physically attached to the warrant and a part thereof. Reading the warrant and complaint together we are of opinion there was an adequate description of the premises and that the scope of the search was properly limited. This conclusion is supported by *Commonwealth* v. *Dana,* 2 Met. 329, 336, and *Dwinnels* v. *Boynton,* 3 Allen, 310, 312, where the statutory provision that the place be designated in the warrant was similar to that contained in G. L. c. 276, § 2. An insertion of the description in the warrant itself would avoid unnecessary questions of the sort encountered here.

3. The third ground set forth in the motions to suppress — and this is also the basis for the motions to dismiss — is that there was no basis for arresting the defendant and that the property taken from him during a search incidental to that arrest was illegally seized. Relying on *Commonwealth* v. *Mekalian,* 346 Mass. 496, the defendant argues that his arrest was for a misdemeanor involving no breach of the peace, and,

if made without a valid warrant, was unlawful.[3] The warrant was both a search and arrest warrant, and it was authorized by G. L. c. 271, § 23. *Commonwealth* v. *McDermott,* 347 Mass. 246, 249–250. We have held above that the warrant was valid. Accordingly, the search incidental to the arrest under it was lawful.

4. The defendant's motions to suppress and motions to dismiss were rightly denied.

*Exceptions overruled.*

[3] See now St. 1967, c. 119, as amended by St. 1967, c. 372, which permits an arrest without a warrant of persons committing certain gaming offences.