SUPERIOR COURT 
 
 COMMONWEALTH v. JONATHAN THEBAUD

 
 Docket:
 2284CR00385
 
 
 Dates:
 May 24, 2024
 
 
 Present:
 William F. Bloomer Justice of the Superior Court
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS THE SEARCHES OF FOUR CELL PHONES (Paper No. 43)
 
 

             The defendant, Jonathan Thebaud ("Thebaud"), moves to suppress evidence seized by police from four cellphones during the execution of search warrants. Thebaud previously moved to suppress other evidence seized in connection with the execution of warrants that authorized the search of: (1) a Cadillac SRX SUV bearing MA registration 1THS11, registered to him (the "Cadillac") (Paper No. 15); (2) CSLI data associated with his cellphone (Paper No. 16); (3) his residences at 258 West Chestnut Street, Brockton, and 10 Abbot Street, Apartment JC, Boston, MA (Paper No. 17); and (4) the Cadillac's OnStar Infotainment System (Paper No. 18). On February 8, 2024, this court denied Thebaud's motions. [1] See Paper No. 40.
            On May 13, 2024, this court heard argument from counsel on Thebaud's present motion. After review of the affidavit submitted in support of the application for the search warrants for the four cellphones, and upon consideration of the parties' respective positions, Thebaud's motion as it relates to Device 1 and Device 4 is ALLOWED in part and DENIED in part and, as it relates to Device 2 is DENIED. As it relates to Device 3, the motion is MOOT.
 
--------------------------------------------
 
[1] The court took no action on the motion to suppress the Cadillac's OnStar Infotainment System (Paper No. 18). The Commonwealth represented that no relevant material was recovered from the system. The court ordered, however, that any information obtained from the Cadillac's OnStar system would not be admissible in evidence at trial in light of the government's representation.
 
                                                            -1-
 
            1. Preliminary Matters
            The Cellphones. Police searched four cellphones pursuant to warrants issued on March 7, 2022.[2] One affidavit was submitted in support of all the applications for these search warrants. Device 1 was seized from inside Thebaud's Cadillac on October 18, 2021, after the vehicle had been towed to Boston Police Headquarters on October 12, 2021. Devices 2 and 3 were seized from Thebaud on November 2, 2021, during the execution of the search warrant at 10 Abbot Street. Device 4, belonging to Thebaud's girlfriend, Alexis Grice ("Grice"), was also seized as a result of the executionof the search warrant at 10 Abbot Street. All four devices are Apple iPhones.
            Standing. Thebaud asserts he has "standing" to contest the searches of Devices 1, 2, and 3, as well as the phone belonging to Grice (Device 4). In the context of the constitutional analysis associated with Fourth Amendment and art. 14 challenges, standing is now a relic of the past. See Commonwealth v. DeJesus, 489 Mass. 292, 293, 295-296 (2022). The proper focus is whether the government has intruded upon an individual' s reasonable expectation of privacy in violation of constitutional rights that are personal to the individual. Id. The Commonwealth did not address the issue of standing in its opposition as it relates to the devices (Paper No. 44), and it offered minimal resistance at the hearing to the standing claim as it relates to Device 4. Paragraphs 10-12 of Thebaud's affidavit in support of his motion to suppress state that he began "accessing" Grice's cellphone, which was password protected, after the loss of his cellphone on October 12, 2021, and that the phone "was exclusively controlled, accessed, and used by" himself and his girlfriend. In the absence of any meaningful opposition, this court concludes that
 
--------------------------------------------
 
[2] The seizure of the cellphones is not at issue here, but the dates that police came into possession of these phones arc relevant.
 
                                                            -2-
 
the factual assertions in Thebaud's affidavit accompanying his motion to suppress, coupled with the government's stated position in the search warrant affidavit that Thebaud used Device 4 to communicate with others about the crime, is sufficient to establish Thebaud's subjective expectation of privacy in the contents of Device 4 as well as an expectation of privacy that society would recognize as reasonable. Sec Commonwealth v. Cruzado, 480 Mass. 275, 282 (2018) (finding standing where cellphone seized from individual who was not its owner and subsequently searched); Commonwealth v. Fulgiam, 477 Mass. 20, 35-36 (2017) (finding defendant had standing to contest search of cellphone where Commonwealth consistently attributed telephone account to defendant despite account in fictitious name and defendant implicitly claimed ownership of cellphone account).
            Device 3. The warrant for this device, like the warrant for Device 2, authorized police to search only for the device's corresponding phone number and IMEI number.[3] The Commonwealth represented at the hearing that Device 3 had no SIM card[4] and, therefore, no relevant evidence was obtained from the search.  In light of this representation, Thebaud's motion is MOOT. However, any evidence extracted during the forensic search of Device 3 shall not be admissible in evidence at trial against Thebaud in light of the Commonwealth's representation.
 
--------------------------------------------
 
[3] The International Mobile Equipment Identity ("IMEi") number is a unique fifteen-digit serial number for identifying a mobile phone.
[4] A Subscriber Identity Module ("SIM") card stores identification information that, among other things, links an electronic device to the owner's account.
 
                                                            -3-
 
            II.        The Search Warrants
            A. Probable Cause to Believe Thebaud was Involved in the Homicide
            At approximately 2:59PM on October 10, 2021, Trevon Sands ("Sands") was shot to death as he walked from his home on Ayles Road in Hyde Park. In denying Thebaud's previous motions to suppress, this court concluded that the affidavits submitted in support of search warrants for Thebaud's Cadillac and residences established probable cause to believe Thebaud and his codefendant, Pierre Valbrun ("Valbrun"), participated in a joint venture with other individuals to murder the victim and acted as accessories after the fact to the murder of Sands. See Paper No. 40. This court also found there was probable cause to believe Thebaud was present at or in close proximity to the shooting based on the information set forth in the affidavits.
            In evaluating the sufficiency of an application for a search warrant, this court's review, "begins and ends with the four corners of the affidavit." Commonwealth v. Dorelas, 473 Mass 496, 500-501 (2016). "The burden of establishing that evidence is illegally obtained is on the defendant when the search is under a warrant." Commonwealth v. Henley, 488 Mass. 95, 114- 115 (2021). "A magistrate's determination of probable cause is accorded 'considerable deference." ' Commonwealth v. Holley, 478 Mass. 508, 521 (2017) (internal citation omitted).
            Presently at issue is the affidavit submitted by Boston Police Detective Jessica Gardner ("Gardner") in support of the search warrant applications for Devices 1 - 4. It is the most recent in a series of affidavits submitted by detectives seeking the issuance of search warrants. Gardner's affidavit essentially expands on the information previously gathered by investigators and detailed in prior search warrant applications. Nothing in Gardner ' s affidavit changes this
 
                                                            -4-
 
court's previous determination regarding probable cause to believe Thebaud was involved in a joint venture to murder Sands and acted as an accessory after the fact to the homicide.
            B. The Nexus Requirement
            Thebaud's probable cause challenge focuses primarily on an allegedly insufficient nexus between the electronic devices and the murder. "To establish probable cause to search, the facts contained in the warrant affidavit, and the reasonable inferences to be drawn therefrom, must be sufficient for the issuing judge to conclude that ' a crime had been committed ... and that items described in the warrant were related to the criminal activity and probably in the place to be searched."' Commonwealth v. Morin, 478 Mass. 415, 425 (2017). Police may not recover the contents of cellphone communications "without establishing a nexus between the [crime] and the defendants' cellular telephone communications." Holley, 478 Mass. at 522 n.19, citing Commonwealth v. Fulgiam, 477 Mass. 20, 34(2017). "To establish the requisite nexus , the affidavit must demonstrate a substantial basis to conclude that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues." Commonwealth v. Hobbs, 482 Mass. 538, 546 (2019).
            In seeking authorization to search a particular cellphone, investigators may not rely " on the general ubiquitous presence of cellular telephones in daily life, or an inference that friends or associates most often communicate by cellular telephone, as a substitute for particularized information that a specific device contains evidence of a crime." Morin , 478 Mass at 426. "[T]here must be 'specific, not speculative,' evidence linking the device in question to the criminal conduct." Henley, 488 Mass. at 116, quoting Commonwealth v. Jordan, 91 Mass. App. Ct. 743, 750(2017). However, police need not know to a certainty that a defendant was using
 
                                                            -5-
 
his or her cellphone to communicate about the crime. Holley, 478 Mass. 508, 526-527. "The nexus requirement docs not need to be based on direct observation; it can be found in ' the type of crime, the nature of the [evidence] sought, and normal inferences as to where such' evidence may be found." Commonwealth v. Snow, 486 Mass. 582, 586 (2021) (citations omitted). Sec Commonwealth v. Lowery, 487 Mass. 851, 857 (2021) (requisite nexus need not be based on direct observation).
            As explained in detail below, Gardner's affidavit describes more than the existence of a joint venture to murder Sands and the opinion of investigators that coventurers frequently use cellphones to communicate about the crime. Accordingly, there was a substantial basis to conclude that evidence related to the homicide would be found on Devices I , 2, and 4. Cf. Commonwealth v. White, 475 Mass. 583, 590-591 (2016) (affirming suppression of evidence where only connection between fatal armed robbery and defendant's cellphone was affiant's assertion cellphones are "necessary to social interactions"); Commonwealth v. Broom, 474 Mass. 486, 496-497 (2016) (concluding affidavit did not establish probable cause where only connection between fatal aggravated rape and defendant's cellphone were conclusory statements regarding phone' s ability to store vast amounts of information).
            Here, the affidavit describes a preplanned and orchestrated murder. As detailed in Gardner's affidavit, video footage captures Thebaud leaving his and Grice's apartment on Abbot Street sometime around 2: l6PM carrying, among other things, a white plastic shopping bag. Thebaud meets with "Suspect 1," who arrived at 10-12 Abbot Street as a passenger in a rideshare (Uber) sedan. Thebaud nods to Suspect 1, and the two walk past the front of 10-12 Abbot Street. Based on their review of video surveillance footage, investigators believe that Thebaud and Suspect 1 drove to Hyde Park in the Cadillac, where they coordinated with three occupants of
 
                                                            -6-
 
codefendant Valbrun's Jeep and circled the area of the victim's house on Westminster Street for approximately seventeen minutes, beginning at 2:41PM.
            At 2:56PM, Sands exits his house. The Jeep drops off Suspect 2, who follows Sands on foot. The Jeep remains in the area of Westminster and Derry Streets for approximately two minutes before leaving and taking a right onto Derry Street. Thebaud and Suspect l, in the Cadillac, then turn up Ayles Road and follow Sands and Suspect 2. A volley of gunshots is heard. Investigators believe, and it is reasonable to infer, that Suspect l either exits the Cadillac or shoots from within the vehicle near the intersection of Safford Street, striking Sands in the upper body and leaving behind multiple 9mm casings. The Cadillac then takes a right onto Safford Street and a left onto Chapel Street at a high rate of speed. Suspect 2, on foot, then approaches Sands, who is lying on the ground. Suspect 2 stands over the victim and fires .45 caliber rounds into Sands. Suspect 2 then flees on foot to Derry Street, where he is met by the Jeep and enters the rear passenger side of the vehicle. The Jeep then speeds from the area, turning left onto Safford Street and right onto Huntington Avenue. Video footage shows the Cadillac returning to Abbot Street at approximately 3:04PM. Suspect l then leaves the area in a another rideshare vehicle carrying the white shopping bag Thebaud had in his possession earlier in the day. Thebaud does not reenter l 0-12 Abbot Street.
            Gardner's affidavit establishes "specific, not speculative" evidence linking Devices l, 2, and 4 to Thebaud and his participation in the joint-venture homicide as well as his role as an accessory after the fact. Both Thebaud and Grice provided investigators the number to Thebaud's cellphone, which ended in 9680, and T-Mobile records indicate the subscriber for the phone assigned that number is Thebaud 'smother. Investigators found Device l in the Cadillac after Thebaud was stopped in the vehicle on October 12, 2021, and the car was towed to Boston
 
                                                            -7-
 
Police Headquarters. Call detail records associated with the phone ending in number 9680 show no outgoing text messages or calls from that device after October 12, 2021, other than to check voicemail. It is reasonable to infer that the phone assigned the number ending in 9680 is Device
1. The court, therefore, refers to that cellphone as Device 1.
            Although Thebaud denied being in Hyde Park on the day of the murder, Gardner's affidavit recites extensive video footage showing a vehicle matching the description of the Cadillac, at one point capturing its license plate, in the vicinity of the shooting in Hyde Park. As noted above, Sands was shot and killed at approximately 2:59PM on October I 0, 2021. Cell site location information ("CSLI") for Device I, obtained pursuant to a search warrant, shows the device activating cell towers in the area around the time of the shooting in Hyde Park. The affidavit further recites call detail records indicating thirteen incoming and outgoing calls and text messages to and from Device 1 between l :40PM and 5:42PM on the day of the murder, including one at 2:59PM. Upon returning to 10-12 Abbot Street at 3:04PM, Thebaud did not reenter the building. It is reasonable to infer that Thebaud had Device l in his possession after leaving Suspect l on Abbot Street and driving to his mother's home in Brockton.
            In addition, investigators obtained the account information for the customer (identified as Suspect l) dropped off at 10-12 Abbot Street on the date of the shooting from Uber. Detectives learned that it was associated with a customer named "Frandy Garcon" with a corresponding phone number ending in 8510. Call detail records for the phone number ending in 8510 reveal that it was in contact with the phone numbers associated with Device 1 and Device 4 on the date police stopped Thebaud and impounded his Cadillac (October 12, 2021). Both Thebaud and Garcon are listed in the Boston Police Gang Database, maintained by the Boston Regional Intelligence Center ("BRIC"), as "Wood Ave" gang associates. An item of mail addressed to
                                                            -8-
 
Frandy Garcon bearing Thebaud's address in Brockton was discovered along with Device l during the search of the Cadillac pursuant to the warrant. The affidavit notes that Garcon had prior firearms, drug, and violent assault charges.
            Gardner's affidavit further notes that Thebaud's codefendant, Valbrun, is listed in a database maintained by the BRIC as an associate of the BBMG street gang. Gardner states that, based on video footage obtained by investigators , investigators believe that Valbrun picked up two unknown males before driving to Sands' house in Valbrun's Jeep on October 10, 2021. Call detail records for a mobile phone obtained from Valbrun during a police interview of him on November 15, 2021, show that Valbrun's cellphone made and received calls and text messages around the time Sands was shot.[5] Those records also reveal contact with phones subscribed to by individuals associated with the BBMG gang on the days surrounding and including the day of the shooting. According to Gardner's affidavit, call detail records for Devices 1 and 4 and the phone obtained from Valbrun's show telephonic contact in common with another known BBMG gang associate.
            The affidavit also states that, after police interviewed Thebaud on October 12, 2021, Gardner conducted a telephone interview of Grice. Gardner contacted Grice by calling the number assigned to Device 4 (ending in 3936). Grice originally reported that she and Thebaud were making Instacart deliveries in her vehicle on October 10, 2021. She later recanted the statement and, after reviewing her "messages" with Thebaud, informed Gardner that they were in the house all day until Thebaud left to go to his mother's home in Brockton.  When she was asked to review any communications with Thebaud to help her recall their whereabouts on October 10, 2021, Grice stated, "I'm going through my messages ... I'm looking on Apps."
 
--------------------------------------------
 
[5] An additional cellphone, designated Device 5, was seized from Valbrun 's Jeep during a search on November 15, 2021, pursuant to a warrant. That cellphone is not the subject of the present motion to suppress.
 
                                                            -9-
 
Grice stated she received a message from Thebaud at 3:59PM stating, "I' m here at my moms," and another message at 4:30PM stating he was returning home. Neither of these messages (or another "message" from Thebaud to Grice at 11:48AM) correspond with the times of outgoing or incoming text messages reflected in the call detail records for Devices 1 and/or 4 on October 10, 2021. Call detail records show a similar lack of correspondence between Thebaud and Garcon. It is reasonable to infer, as Gardner states in her affidavit, that Thebaud and other individuals of interest in the homicide may have communicated through third party messaging apps or social media outlets, "connecting via Wi-Fi service, iMessage, or utilizing more than one device." As Gardner explained in her affidavit, "[n]one of these applications would appear on call detail records."
            The shooting of Sands, as described above, involved at least five individuals working in a planned and coordinated fashion to achieve one goal - to kill Sands. There were two separate vehicles, two firearms, and, it is reasonable to infer, two different shooters. Investigators believe that associates of two street gangs, the Wood Ave and BBMG gangs, planned and executed the murder of Sands. It is not unreasonable to infer that a coordinated attack carried out by five individuals in two separate cars would require cellphone communications between coventurers. See Commonwealth v. Henley, 488 Mass. 95, 116-118 (2021) (affidavit detailing planned and coordinated murder set forth probable cause and nexus to search defendant's cellphone; "[t]his type of coordination is improbable without real-time communication through cellphone calls or text messages"); Commonwealth v. Snow, 486 Mass. 582, 587-589 (2021) (affidavit detailing planned and coordinated murder by three males established probable cause and nexus to search defendant's cellphone); Commonwealth v. Arthur, 94 Mass. App. Ct. 161, 165-167 (2018) (one
 
                                                            -10-
 
could readily infer vehicles' occupants had been in communication in coordinated attack using separate vehicles).
            "In dealing with probable cause ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act. " Arthur, 94 Mass. App. Ct. at 167, quoting Commonwealth v. Gentile, 437 Mass. 569, 573 (2002). This court concludes that the facts contained in the affidavit, viewed as a whole and not in splendid isolation, establish a nexus between the murder of Sands and Device 1. Sec Snow, 486 Mass. at 588 (reviewing court does not consider facts contained in search warrant affidavit for cellphone content "in isolation").
            As noted above, Gardner's affidavit recites that, on October 12, 2021, police questioned Thebaud at police headquarters about his potential involvement in the murder. In anticipation of obtaining a search warrant, police also seized Thebaud's Cadillac and Device 1, which was in the car, on that date. At that point, Thcbaud undoubtedly was aware he was a suspect in the homicide investigation.
            On November 2, 2021, while executing the search warrant at l O Abbot Street, police seized two additional cellphones (Devices 2 and 3) from Thebaud. "Cellphones arc durable goods, of enduring use, and not inherently incriminating." Commonwealth v. Janvier, 104 Mass. App. Ct. 93, 101 (2024). There is a reasonable likelihood that Thebaud had service in effect for Device 2, particularly after the seizure of Device 1, and that he did not coincidentally obtain and activate Device 2 on November 2, 2021. See id. at 103 (finding likely duration of use of mobile phone number for more than one-month reasonable). The affidavit sets forth sufficient information to justify the search of Device 2 for its corresponding phone number and IMEi number.
 
                                                            -11-
 
            Device 4 presents a closer question. Gardner's affidavit notes that, following the seizure of Device 1 on October 12, 2021, call detail records for Device 4 indicate that numbers associated with several of Thebaud's associates, including Garcon and another Wood Ave gang member, begin to frequently appear on Grice's device for the first time. During the execution of the search warrants on November 2, 2021, Grice identified Device 4 as belonging to her. As noted above, on October 12, 2021, Grice initially informed Gardner that she and Thebaud were making Instacart deliveries on the date of Sands' murder but then recanted that statement and said she had received "messages" from Thebaud regarding his whereabouts on the date of the murder. When asked to provide a screenshot of the communications to detectives, Grice declined. Call detail records for the phone associated with frandy Gracon show that, on November 2, 2021, it contacted Device 4, as well as a number believed to be Thebaud's landline, and a phone number associated with another Wood Ave gang associate (the phone number associated with the Wood Ave gang member also appears on the call detail records for Device 1 on the date of the shooting).
            The court concludes that the affidavit established probable cause to believe Thebaud "messaged" Grice on Device 4 regarding his whereabouts on the date of the murder (October I 0, 2021) and that he possessed and used  Device 4 to communicate  with Garcon and/or other associates about the crime after learning he was a suspect in the  murder of  Sands and  following the seizure of Device I on October 12, 2021.
            C. The Particularity Requirement
            Thebaud argues that Gardner's affidavit fails to describe the items to be searched for in Devices l and 4 with sufficient particularity, requiring suppression of the overbroad portions of
 
                                                            -12-
 
the warrants.[6] Article 14 of the Massachusetts Declaration of Rights "require[s] that a search warrant describe with particularity the places to be searched and the items to be seized." Commonwealth v. Perkins, 478 Mass. 97, 106 (2017). The particularity requirement " both defines and limits the scope of the search and seizure." Commonwealth v. Pope, 354 Mass. 625, 629 (1968). "The dual purposes of the particularity requirement are ' ( l) to protect individuals from general searches and (2) to provide the Commonwealth the opportunity to demonstrate, to a reviewing court, that the scope of the officers' authority to search was properly limited."' Commonwealth v. Perry, 489 Mass. 436,459 (2022), quoting Commonwealth v. Valerio, 449 Mass. 562, 566-567 (2007). "The particularity requirement acts as 'a safeguard against general exploratory rummaging by the police through a person's belongings."' Snow, 486 Mass. at 590 (internal citation omitted).
            "Searches of electronic devices present major constitutional hazards[.]" Commonwealth v. Keown, 478 Mass. 232, 241 (2017). The search of a mobile telephone "must be done with special care and satisfy a more narrow and demanding standard" than a search conducted in the physical world. Dorelas, 473 Mass. at 502. Although general or exploratory searches of cellphones are impermissible, police need not identify the precise location or files within a cellphone where evidence would be found. Henley, 488 Mass. at 120-121. Rather, investigators must limit the scope of the search to specifically enumerated categories of evidence related to the crime under investigation and authorized by the warrant. Id. In addition, warrants to search mobile telephones must set forth temporal limits. Id. at 121-122.
            (1)        Temporal Limits. Here, police sought authorization to search Device 1 for the period of October 8, 2021 (two days before the shooting) through October 12, 2021 (two days
 
--------------------------------------------
 
[6] Thebaud docs not advance a persuasive argument for limiting the scope of the search with respect to Device 2, which only sought to obtain the phone and IMEi numbers associated with the device.
 
                                                            -13-
 
after the shooting and the date police seized the phone along with the Cadillac). Investigators sought authorization to search Device 4 for the period of October l 0, 2021 (the date of the homicide, which was the same day Thebaud "messaged" Grice regarding his whereabouts) and October 12, 2021 through October 13 , 2021 (the day of and the day after Device 4 came into possession of the police and Thebaud appears to begin using Device 4).
            These temporal limits, the court concludes, are supported by the facts contained in Gardner's affidavit and the fair inferences drawn from those facts. In reaching this conclusion, the court finds that the outer boundaries within which police may justifiably search the cellphones under the warrants for evidence of the crime, here two days before and after the murder for Device l and the day of and one day after the seizure of Thebaud's cellphone for Device 4, are reasonable. Defining the precise parameters for searches of cellphones that are justified by probable cause is difficult and requires consideration of the facts set forth in the affidavit. Hobbs, 482 Mass. at 549 (determining permissible parameters of time for CSLI searches is difficult and requires fact-intensive inquiry).
            Here, it is reasonable to infer that the coordination required for five or more individuals to plan and prepare for, and ultimately carry out this attack, including procuring two handguns, identifying two triggermen, and using two "get away" cars, and then conceal their involvement in the crime, including taking steps to discard and/or conceal evidence of the murder, could encompass two days before and after the murder. See Henley, 488 Mass. 121-122 (in gang- related murder, "reasonable temporal limit would extend beyond just the day of the murder or even days leading up to the murder"); Arthur, 94 Mass. App. Ct. at I 67 (factual and practical considerations of everyday life tell us that cellphones likely were used in coordinated attack on home by multiple perpetrators, "including an exchange of calls, text messages , and perhaps other
 
                                                            -14-
 
information in the days, hours, and minutes leading up to the attack"). Cf. Snow, 486 Mass. at 590 (lack of any time restriction rendered warrant impermissibly broad).
            It is also reasonable to infer that Thebaud used Device 4 to communicate with coventurers and others for one or two days after his phone had been seized by police on October 12, 2021, particularly after his car had been seized and police interviewed him about Sand's murder. See Henley, 488 Mass. at 116 ("[T]he nexus required to establish that a cellphone may contain evidence of a crime requires only a 'fair probability that evidence of such a crime would be found in [the cell phone].'"). In dealing with probable cause, courts consider the "factual and practical considerations of everday life," Gentile, 437 Mass. at 573, and "[a] magistrate' s determination of probable cause is accorded 'considerable deference."' Holley, 478 Mass. at 521.
            2. Specific Categories of Evidence. Appendix A to the search warrants identifies twelve categories of evidence to be seized from Devices 1 and 4.7 The categories range from communications, photographs and videos, to notes, reminders, calendars, and records of internet activity, including "bookmarked" or "favorite" web pages, browser history, and more. When a warrant is not properly limited in scope, "the correct remedy is partial suppression only of the evidence that fell outside what would have been a reasonable scope." Snow, 486 Mass. at 591.
            The court concludes Gardner's affidavit establishes a substantial basis to search Devices 1 and 4, within the temporal limits stated above, for communication and location data related to the murder of Sands and acccsso1y after the fact to murder. The court agrees with Thebaud, however, that the warrant is overbroad and suppression is required for evidence contained in
 
--------------------------------------------
 
7 Some of the categories concern identification, security, and other system-related in formation, such as the telephone or IMEi numbers and passwords corresponding with Devices I and 4, The search of these devices for this type of information is supported by the facts and assertions contained in the affidavit.
 
                                                            -15-
 
notes, reminders, documents, calendars, internet activity (including browser search history), and any non-communication data pulled from social media applications.[8] Gardner's affidavit does not articulate a sufficient basis to cast such a wide net. See Commonwealth v. Broom, 474 Mass. 486, 496 (2016) ("[I]t is not enough that the object of the search may be found in the place subject to search. Rather, the affidavit must demonstrate that there is a reasonable expectation that the items sought will be located in the particular data file or other specifically identified electronic location that is to be searched." [emphasis in original; internal citation omitted]). Such a search is akin to a general rummaging around by police in the contents of Devices 1 and 4 in the hope of discovering incriminating evidence.
ORDER
            For the reasons stated above, Thebaud's Motion to Suppress the Searches of Four Cell Phones (Paper No. 43) as it relates to Device 1 and Device 4 is ALLOWED as to evidence contained in the notes, reminders, documents, calendars, internet activity, and any non- communication data extracted from social media applications and otherwise DENIED; as it
relates to Device 2 is DENIED; and as it relates to Device 3 is MOOT. However, any evidence extracted during the forensic search of Device 3 shall not be admissible in evidence at trial against Thebaud in light of the Commonwealth's representation that no SIM card was located in
 
--------------------------------------------
 
[8] As noted in Gardner's affidavit, it is not uncommon today for individuals to communicate over social media accounts and/or cellphone applications, such as Facebook, lnstagram, WhatsApp, Twitter, and Snapchat. These communications may include not only words, but pictures and video recordings. See Snow, 486 Mass. at 593 (in the context of cellphone searches "[c]ornrnunications are not limited to words"). Moreover, Grice told Gardner that she was searching the messages and applications on her phone to find communications with Thebaud regarding his whereabouts on the date of the murder.  Coupled with the absence of any entry in the call detail records for Devices  I and 4 corresponding with the date and times of those messages, it is reasonable to infer that Thebaud and Grice communicated over a cellphone application or social media account in this specific case.
 
                                                            -16-
 
Device 3.