COMMONWEALTH vs. GEORGE D. TAYLOR.

Norfolk.  December 11, 1979. — August 29, 1980.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Search and Seizure.  Receiving Stolen Goods.*

Where a search warrant authorized a search for all items particularly
described on a six-page list, but the list was omitted from the warrant,
the warrant constituted authorization for a general search and was in-
valid on its face.  [453-457]

At the trial of a defendant charged with receiving stolen property, there
was sufficient evidence to warrant a finding that the defendant knew
that items found in his jewelry store had been stolen.  [457-458]

INDICTMENT found and returned in the Superior Court on
November 22, 1976.

A motion to suppress was heard by *Mulkern, J.,* and the
case was tried before him.

*Howard J. Alperin (Barry M. Haight* with him) for the
defendant.

*Charles J. Hely,* Assistant District Attorney, for the Com-
monwealth.

GOODMAN, J.  The defendant appeals from a judgment of
conviction of receiving stolen property valued at more than
one hundred dollars.  The property consisted of certain an-
tique items, mostly hand crafted jewelry, which were stolen
from an antique shop in Harwichport and found in the de-
fendant's jewelry store in Brookline, where they were seized
pursuant to a search warrant.  The defendant contends that
the trial judge erred in denying his motion to suppress the
items seized in the store and in denying his motion for a
directed verdict.  The defendant also alleges and argues
various other errors which we need not consider since we
hold that the defendant's motion to suppress should have
been granted.

We summarize the background facts. On or about June 19, 1976, an antique shop in Harwichport, operated by two brothers, Philip and Lawrence Marsh, was burglarized. A large number of items of antique jewelry, worth several thousand dollars, were taken, and the brothers prepared from their stock book a six-page list describing the stolen items. On October 9, 1976, Lawrence Marsh recognized some of these items at an antique show in Waltham at a stand, the operator of which had bought them from the defendant at his jewelry store. Thereafter, on October 21, 1976, Lieutenant Trahon of the Brookline police department applied for and was issued a warrant to search the defendant's jewelry store. On the same day, the Brookline police, accompanied by the Marshes, their associate and two Harwich police officers, went to the defendant's jewelry store and seized about forty-seven items that had been stolen from the Marshes' shop. The defendant, who had been present during the search, was arrested. These matters will be developed in further detail in connection with the defendant's contentions.

1. *The search and seizure.* The circumstances set out above were included in an affidavit by Lieutenant Trahon in support of an application for a search warrant.[1] "The property for which . . . the issuance of a search warrant" was sought (see G. L. c. 276, § 2B, inserted by St. 1964, c. 557, § 3 [par. 4 of the affidavit form]) was described as: "All the particularly described items of antique jewelry described on the attached six (6) pages except those items crossed out and/or check[ed] off list to indicate recovery by the owners. Items crossed or check[ed] off by the owner, Lawrence Marsh." Submitted as part of the affidavit was the six-page list described above. It contained (without counting the items checked off or crossed out) 318 items. The search warrant which the court issued authorized the seizure of "all the particularly described items of antique jewelry described on the attached six (6) pages . . .,"

---

[1] No question is raised as to the sufficiency of the affidavit.

repeating verbatim the entire description in the affidavit. The clerk did not, however, give Lieutenant Trahon the six-page list when he gave him the search warrant. The defendant argues that this rendered the warrant invalid on its face because, as set out in his motion to suppress, "[t]he property seized was not mentioned in the search warrant" and "[t]he warrant did not particularly describe the property and/or articles to be seized."

The burden of justifying the intrusion of a search is on the Commonwealth. Where the defendant, at a hearing on a motion to suppress, shows that a search was made without a warrant (*Commonwealth* v. *Franklin,* 358 Mass. 416, 420 [1970]), the burden is on the Commonwealth to justify the search. *Commonwealth* v. *Antobenedetto,* 366 Mass. 51 (1974). Where it appears at such a hearing that the search was effected by a warrant valid on its face the Commonwealth has thereby justified the intrusion, and it becomes the defendant's burden to show illegality. *Commonwealth* v. *Bond,* 375 Mass. 201, 210 (1978). In the case at bar the document by which the Commonwealth justifies the search purports to be a warrant: but whether the document does indeed justify the search depends on whether on its face it is capable of valid execution — whether the document, without more, sufficiently limits the discretion of the executing officers so that reference by them to that document makes a "general search[ ] under [it] impossible and prevents the seizure of one thing under a warrant describing another." *Marron* v. *United States,* 275 U.S. 192, 196 (1927). *Commonwealth* v. *Cefalo,* 381 Mass. 319, 327-328 (1980). *United States* v. *Marti,* 421 F.2d 1263, 1268 (2d Cir. 1970), cert. denied, 404 U.S. 947 (1971). *United States* v. *Johnson,* 541 F.2d 1311, 1313 (8th Cir. 1976). *United States* v. *Klein,* 565 F.2d 183, 189 (1st Cir. 1977). In terms of art. 14 of our Declaration of Rights, the validity of the warrant requires a "special designation of the . . . objects of search . . . or seizure" which "both defines and limits the scope of the search and seizure, thereby protecting individuals from general searches . . . ." *Commonwealth* v. *Pope,*

354 Mass. 625, 629 (1968). *Commonwealth* v. *Cefalo,* *supra* at 327. See G. L. c. 276, § 2, as appearing in St. 1964, c. 557, § 2 ("Search warrants . . . shall particularly describe the property or articles to be searched for"). Here, there is no question that the warrant as given by the clerk to Lieutenant Trahon was defective on its face. Without the list it was obviously "deficient in the description of . . . the goods which were the object of search . . . ." *Sandford* v. *Nichols,* 13 Mass. 285, 289 (1816). The Commonwealth has therefore not met its burden of showing that seizure of the items on the list was justified within the four corners of the warrant. *Sandford* v. *Nichols,* 13 Mass. at 288. See *Commonwealth* v. *Crotty,* 10 Allen 403, 405 (1865).[2] To remedy the facial defect of the warrant, the Commonwealth relies on the affidavit,[3] which does include the six-page list. *Commonwealth* v. *Pope,* 354 Mass. at 629. *Commonwealth* v. *Cefalo,* 381 Mass. at 329-330.

In *Commonwealth* v. *Accaputo,* 380 Mass. 435, 446 (1980), the court points out that "[t]here is substantial authority indicating that an affidavit may be referred to for purposes of providing particularity only where the affidavit accompanies the warrant and the warrant uses suitable words of reference which incorporate the affidavit" (citing cases) and that "[t]hese requirements serve not only to circumscribe the discretion of the executing officers but also to

---

[2] Generally, the burden of producing such a document is easily met. The four corners of the warrant will generally contain a designation of a place to be searched and objects to be seized, which, for aught that appears on the face of the warrant, reasonably limits the discretion of the executing officers. It then becomes the defendant's burden to prove that a plausible designation in the warrant is in fact ambiguous and that its execution has resulted in a search and seizure beyond the confines of the warrant. See *Commonwealth* v. *Rugaber,* 369 Mass. 765, 769 (1976), where "[t]he description . . . was not inadequate on its face." See *Commonwealth* v. *Gill,* 2 Mass. App. Ct. 653, 654-656 (1974).

[3] See G. L. c. 276, § 2B, inserted by St. 1964, c. 557, § 3, which provides that "[t]he person issuing the warrant shall retain the affidavit and . . . [u]pon the return of said warrant, the affidavit shall be attached to it and shall be filed therewith . . . ."

inform the persons subject to the search and seizure what the officers are entitled to take," citing *United States* v. *Marti*, 421 F.2d at 1268, and *In re Lafayette Academy, Inc.*, 610 F.2d 1, 5 (1st Cir. 1979). We put aside the question whether the warrant contains "suitable words of reference which incorporate the affidavit," so that the list attached to the affidavit may be read to lend particularity to the description in the warrant. This would not avail the Commonwealth, for it would still not limit the discretion of the searching officers unless a copy (see note 3, *supra*) of the list accompanied the warrant[4] so that the warrant and the list could be read as a single document. Apart from such accompaniment, the warrant is incomplete.

Nor did the prosecution at the hearing on the motion to suppress (see *Commonwealth* v. *Underwood*, 3 Mass. App. Ct. 522, 532 n.9 [1975]) attempt to remedy the omission of the list. See *In re Lafayette Academy, Inc.*, 610 F.2d at 5; *Bloom* v. *Florida*, 283 So.2d 134, 135, 136 (Fla. App. 1973); *Lockridge* v. *Superior Court*, 275 Cal. App. 2d 612, 625-626 (1969). Thus, when the defendant elicited from the clerk that he had not issued the list with the warrant the prosecuting attorney made no attempt to elicit an explanation by cross-examination. Further, when the defendant elicited from Lieutenant Trahon evidence which suggested that he did not have the six-page list with him when he received the warrant or served the defendant,[5] the prosecuting attorney

---

[4] We proceed on the basis, more favorable to the Commonwealth, that accompaniment without the physical attachment recited in the warrant is sufficient to fulfil the essential requirement of "attachment". Cf. *Commonwealth* v. *Accaputo*, 380 Mass. 435, 446 (1980). In this case the result is not affected.

[5] The warrant was introduced in evidence without the six-page list. The defense counsel referring only to the warrant elicited the following testimony:

Q. "What you received was the white page that is before you?"
A. "That is right, sir."
Q. "Is that correct?"
A. "Yes sir."

stood silently by and asked no questions to clarify the testimony or indicate whether Lieutenant Trahon had a copy of the list or whether the list could otherwise somehow be said to have accompanied the warrant. The prosecution argues that the use of the warrant at the search is a matter of its execution, the illegality of which is for the defendant to show. See *Commonwealth* v. *Connolly,* 356 Mass. 617, 625 (1970). The prosecution, however, confuses illegal execution (which the defendant must show) with an explanation or palliation of a warrant which on its face is not capable of legal execution (which the Commonwealth must provide).[6] *United States* v. *Abrams,* 615 F.2d 541, 550 (1st Cir. 1980) (Campbell, J., concurring).

2. *Motion for directed verdict.* The defendant argues that, even with the admission of the items which we now hold should have been suppressed, the defendant was entitled to a directed verdict.[7] We disagree.

The jury could have found beyond a reasonable doubt that the defendant knew that the large lot of items seized by the police on October 21, 1976, had been stolen. Some of

---

Q. "And you took that white page, which is the search warrant?"
A. "Yes, sir."

"  . . . .

Q. "And when you arrived at the jewelry store, did you physically have the warrant with you?"
A. "Yes, sir, I did."
Q. "And when we talk about physically hav[ing] the warrant, that is, the exact piece of paper you had right here?"
A. "Yes, sir."

[6] The lack of care in the issuance of the warrant in this case points a lesson which should impress clerks and prosecuting officials.

[7] The defendant concedes that there was evidence tending to implicate him in the receipt of goods stolen from the Harwichport antique shop apart from the evidence connected with the entry into and search of the defendant's store on October 21, 1976. No question as to whether the defendant may be retried has been argued to us, and we intimate no views on this matter. See *A Juvenile* v. *Commonwealth* (*No. 2*), 381 Mass. 379, 383 n.5 (1980), and *Lydon* v. *Commonwealth,* 381 Mass. 356, 361 n.9 (1980). The defendant's brief asks us merely to reverse the judgment if we rule against him on his motion for a directed verdict.

the items still had the original Marsh tags affixed. Further-
more, the operator of the Waltham booth, where Lawrence
Marsh had first discovered some of the items stolen from his
shop, testified that as early as August, 1976, she had bought
about twenty items from the defendant which turned out,
as the defendant's brief put it, to be "part of the same larger
group of jewelry stolen from the Marshes." She further
testified that the defendant had "mentioned to [her] to be
sure and remove the [Marshes'] tags." Nor was there any
explanation how this large lot of pieces so recently stolen
had found its way into the defendant's store. "[I]t [the
evidence] provided no plausible explanation for such posses-
sion consistent with innocence." *Barnes* v. *United States*,
412 U.S. 837, 845 (1973).[8] Indeed, the defendant stated to
the police when the first few pieces were identified that he
did not have any receipts for them. See *Commonwealth* v.
*Sandler*, 368 Mass. 729, 741 (1975); *Commonwealth* v.
*Boris*, 317 Mass. 309, 313-314 (1944); *Commonwealth* v.
*Settipane*, 5 Mass. App. Ct. 648, 651-653 (1977).

*Judgment reversed.*

*Verdict set aside.*

---

[8] See *Ulster County Court* v. *Allen*, 442 U.S. 140, 172 (1979) (dealing
with a different "presumption"), in which Mr. Justice Powell, who wrote
the majority opinion in the *Barnes* case, said of the inference in *Barnes*
that "it was well founded in history, common sense, and experience, and
therefore it was upheld as being 'clearly sufficient to enable a jury to find
beyond a reasonable doubt' [*Barnes* at 845] that those in the unexplained
possession of recently stolen property know it to have been stolen."

In the *Ulster County Court* case, the Court held (at 167), that the pros-
ecution "may not rest its case entirely on a presumption unless the fact
proved is sufficient to support the inference of guilt beyond a reasonable
doubt."