COMMONWEALTH *vs.* GEORGE D. TAYLOR.

Norfolk. December 3, 1980. — April 2, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Search and Seizure,* Warrant, Presumptions and burden of proof. *Practice, Criminal,* Presumptions and burden of proof. *Receiving Stolen Goods.*

A warrant which authorized the search of a jewelry store for certain items of antique jewelry described on a six-page list, which had accompanied the affidavit in support of the warrant, was invalid as insufficiently specific where, although the warrant referred to the list, the list was not attached to the warrant and there was no evidence that the list was tendered with the warrant or was present during the search at the store [274-279]; once the defendant had established that the list was not attached to the warrant when the executing officer received it, the Commonwealth had the burden of going forward with evidence that the officer had possession of the list at the search [279-282].

Although the evidence at a criminal trial would have been insufficient to warrant a conviction had certain evidence not been erroneously admitted, retrial of the defendant was not automatically barred where it was not clear that the Commonwealth would be unable to make its proof without reference to that evidence. [283-285]

INDICTMENT found and returned in the Superior Court on November 22, 1976.

A motion to suppress was heard by *Mulkern,* J., and the case was tried before him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Howard J. Alperin* for the defendant.

*Charles J. Hely,* Assistant District Attorney (*Peter S. Casey,* Assistant District Attorney, with him) for the Commonwealth.

KAPLAN, J. A judge of the Superior Court denied a pretrial motion by the defendant George D. Taylor to suppress

evidence and the defendant was thereafter tried by jury and convicted of the crime of knowingly buying, receiving, and aiding in the concealment of stolen property with a value over $100 (G. L. c. 266, § 60), consisting of assorted items of antique jewelry.[1]  The Appeals Court reversed, holding that the pretrial motion should have been allowed because there was a fatal defect in the warrant pursuant to which the evidence was seized.  10 Mass. App. Ct. 452 (1980). We granted further appellate review and now express our agreement with the result reached by the Appeals Court.

Background facts were as follows.  Sometime in the late evening of June 19, 1976, or early next morning, an antique shop in Harwichport owned by Philip and Lawrence Marsh, brothers, was burglarized of some 300 antique jewelry pieces.  The Harwich police were notified, and the brothers prepared a list of the items stolen on the basis of the shop's inventory books.

Some four months later, on October 9, 1976, Lawrence Marsh with a friend, Lori Ackerman, attended an antique show at Bentley College, Waltham.  Lawrence recognized at the booth of one Tania Langerman a few of the stolen pieces, in particular a black marble inlaid frame.  Langerman surrendered these items to Lawrence.

Lawrence reported his discovery to the Harwich police and on October 21 there was a meeting of the brothers, Ackerman, Langerman, and two Harwich police officers with Detective-Lieutenant Richard Trahon of the Brookline police.  Langerman stated that the pieces Lawrence Marsh recognized had been purchased by her from the defendant at the defendant's store, called Taylor's Jewelers, on Harvard Street in Brookline; and she produced a cancelled personal check, dated August 7, 1976, with which she had paid for most of those items.  On the strength of the conversation at the meeting, Trahon sought and obtained on the same day from the clerk of the Municipal Court of Brookline a

---

[1] The defendant was sentenced to imprisonment for three to five years in M.C.I. Walpole.  Sentence has been stayed pending appeal.

warrant for the search of 236 Harvard Street, the address of the defendant's store. The warrant was executed that afternoon by Trahon accompanied by five Brookline officers, two Harwich officers, the Marsh brothers, and Ackerman. After a two-hour search, approximately forty-seven pieces of jewelry were seized.[2] The defendant, present at the search, was arrested at its conclusion.

1. *Motion to suppress.* The defendant moved before trial to suppress the items of jewelry seized on October 21. He called three witnesses. Edward R. Fahey, clerk of the Municipal Court of Brookline, produced two documents which together, he said, constituted the affidavit in support of the warrant: a stapled two-page sworn statement by Trahon setting out the circumstances of the burglary and the purchase by Langerman from Taylor at Taylor's Jewelers in August; and a separate, stapled six-page document containing the list of missing items as compiled by Lawrence Marsh. The two papers became "Exhibit 1" at the hearing. Fahey also produced a stapled two-page document, the top page being the warrant he had handed to Trahon on October 21, and the other page the continuation of the return filed by Trahon a few days after the search (the return began on the back of the warrant). The two pages became "Exhibit 2." Trahon in his testimony confirmed that exhibit 1 comprised the affidavit, and that the warrant he received from Clerk Fahey was the top paper of exhibit 2. Brookline Detective John Trainor, present at the search, was called as a witness but he added nothing material. The Commonwealth asked no questions at the hearing and offered no witnesses.

A ground of the defendant's motion was the insufficiency of the warrant. Turning to that single page, we find it directs the seizure of "all the particularly described items

---

[2] Although forty-seven pieces of jewelry were identified at trial as seized from Taylor's store and were admitted in evidence, the return on the warrant listed only thirty-three items as seized. Trahon explained the discrepancy as "human error" in compiling the return.

of antique jewelry described on the attached six (6) pages . . . ." But in fact the paper had no attachment. According to both Fahey and Trahon and the findings of the motion judge, the six-page inventory list forming part of Trahon's affidavit was not handed to Trahon as a part of the warrant, and, indeed, under G. L. c. 276, § 2B, that list was required to be retained by the clerk as being a part of the affidavit.

Thus we are left with a warrant that effectively described the property to be seized as "antique jewelry," a description so broad and general as to provide virtually no guidance to one searching the entire goods of a jewelry store for a scattering of pieces claimed to be stolen. This warrant did not answer to the requirements of particularity stemming from the Constitutions and the statute — the Fourth Amendment ("particularly describing") as applied to the States by the Fourteenth; Massachusetts Declaration of Rights, art. 14 ("special designation"); G. L. c. 276, § 2 ("particularly describe"). See *Commonwealth* v. *Pope*, 354 Mass. 625, 628-629 (1968); *Lo-Ji Sales, Inc.* v. *New York*, 442 U.S. 319, 325 (1979); *Marron* v. *United States*, 275 U.S. 192, 196 (1927). There are, indeed, cases in which a "generic" description has been held to suffice, but these are usually confined to searches for contraband, or for stolen goods where there is intrinsic difficulty about a particularized description and where the affidavit establishes a probability that the items sought will constitute a large portion of the inventory to be searched. We cite some examples in the margin;[3] the points of distinction are discussed in *United States* v. *Abrams*, 615 F.2d 541, 545 (1st Cir. 1980); *Montilla Records of P.R., Inc.* v. *Morales*, 575 F.2d 324, 326 (1st Cir. 1978); *United States* v. *Klein*, 565 F.2d 183, 187-188 (1st Cir. 1977); 2 W.R. LaFave, Search and

---

[3] *Commonwealth* v. *Daly*, 358 Mass. 818 (1971) ("any lottery, policy or pool tickets, slips, checks, manifold books or sheets, memoranda of any bet"). *United States* v. *Cortellesso*, 601 F.2d 28, 30 (1st Cir. 1979), cert. denied, 444 U.S. 1072 (1980) ("men's suits, sports jackets, women's boots, leather coats, fur coats, rain coats").

Seizure § 4.6, at 101-104 (1978). From the present affidavit there was no reason to believe that the stolen jewelry would be a significant portion of the Taylor's Jewelers inventory (indeed trial testimony indicated it was not), and the particularization was available but was not used in the warrant. In *Lockridge* v. *Superior Court*, 275 Cal. App. 2d 612, 625-626 (1969), a warrant calling for the seizure of merchandise stolen from a certain jewelry store was held invalid on its face; the State had advanced no reason why an inventory list had not been obtained (more than two months had elapsed since the robbery) and incorporated in or attached to the warrant. As in the *Lockridge* case, the present warrant was invalid simply because it "did not particularly describe the property and/or articles to be seized" (quoting from the present motion to suppress).

Attempting to meet the proposition that "antique jewelry" will not do as a description, the Commonwealth argues that the reference to the six pages, even though these were not attached, indicated that the warrant authorized a search only for a limited group of items and that officers executing the warrant would so understand. The Commonwealth, it seems, wants the warrant to be read as including a part of the affidavit, and thus, to avoid the chief vice of a general warrant, that the decision what to search or seize remains in the discretion of the executing officer without direction from the magistrate (see *Marron* v. *United States*, 275 U.S. 192, 196 [1927]). The contention ignores the words of the Constitutions and the statute which demand that the warrant describe particularly what is to be seized. On occasion we have allowed an extrinsic document such as an application for a warrant or a supporting affidavit to supply the specification of place to be searched or items to be seized, missing from the warrant proper, but in these cases the document was attached to the warrant and the warrant referred to it in terms. See *Commonwealth* v. *Todisco*, 363 Mass. 445, 449 (1973) (place); *Commonwealth* v. *Mele*, 358 Mass. 225, 229-230 (1970) (same); *Commonwealth* v. *Pope*, 354 Mass. 625, 629 (1968) (same); *Dwinnels* v. *Boynton*, 3

Allen 310, 312 (1862) (place, items); *Commonwealth* v. *Dana*, 2 Met. 329, 336 (1841) (same); *Commonwealth* v. *Gill*, 2 Mass. App. Ct. 653, 655-656 (1974) (place). Compare *Commonwealth* v. *Accaputo*, 380 Mass. 435, 445 (1980) (administrative inspection warrant must itself grant the "power to seize"; if mention in the application could ever suffice, it must be where the application was physically attached to the warrant). These cases accord with the generally received rule that for an extrinsic document to be considered part of the warrant it must be referred to therein and either be attached to the warrant or accompany it when served. See *Accaputo, supra* at 446; 2 W.R. LaFave, Search and Seizure § 4.5, at 74; § 4.6, at 100 & n.23 (1978).[4]

A few cases have permitted an unattached document referred to in the warrant but not tendered with it to supply specificity, but it appears that in each instance that document at least was carried to the search by the executing officer and was available there for use by the officers and inspection by the subjects of the search. See *United States* v. *Thompson*, 495 F.2d 165, 170 n.4 (D.C. Cir. 1974); *United States* v. *Averell*, 296 F. Supp. 1004, 1014, 1016 (E.D.N.Y. 1969); *Nunes* v. *Superior Court*, 100 Cal. App. 3d 915, 937 (1980). We need not decide whether we would go so far.[5]

---

[4] See *United States* v. *Klein*, 565 F.2d 183, 186 n.3 (1st Cir. 1977); *United States* v. *Johnson*, 541 F.2d 1311, 1315 (8th Cir. 1976); *United States* v. *Womack*, 509 F.2d 368, 382 (D.C. Cir. 1974), cert. denied, 422 U.S. 1022 (1975); *United States* v. *Tranquillo*, 330 F. Supp. 871, 873 (M.D. Fla. 1971); *United States* v. *Ortiz*, 311 F. Supp. 880, 883 (D. Colo. 1970), aff'd, 445 F.2d 1100 (10th Cir.), cert. denied, 404 U.S. 993 (1971); *State* v. *Dragos*, 20 Ariz. App. 14, 15 (1973); *Bloom* v. *State*, 283 So. 2d 134, 135-136 (Fla. Dist. Ct. App. 1973); *State* v. *Corbin*, 419 A.2d 362, 363 (Me. 1980); *Frey* v. *State*, 3 Md. App. 38, 46-47 (1968); *O'Brien* v. *State*, 158 Tenn. 400, 402 (1929).

[5] Nor are we called on to decide whether we would allow a separate document to supply the specificity if, though physically attached to the warrant, it was not referred to therein. The court in *Castle News Co.* v. *Cahill*, 461 F. Supp. 174, 181 (E.D. Wis. 1978), sustained a warrant on such a showing.

For in the present case the defendant at the suppression hearing had established that the list was not attached to the warrant as handed to the executing officer, and there was no evidence that the list was tendered with the warrant or was present during the search at the store.

The attachment requirement (or, at a possible bare minimum, presence of the document during search) not only serves to control the executing officer but also informs the person affected of the limits of the officer's authority. See *Marshall* v. *Barlow's, Inc.*, 436 U.S. 307, 323 (1978) (warrant both bridles the discretion of the executing officer and "advise[s]" the subject of the search of its "scope and objects"); *Camara* v. *Municipal Court of the City & County of San Francisco*, 387 U.S. 523, 532 (1967); *Commonwealth* v. *Accaputo, supra* at 446.[6] The Commonwealth's proposition would have the executing officer contain himself, at best, in accordance with his own fallible memory, see *United States* v. *Marti*, 421 F.2d 1263, 1268-1269 (2d Cir. 1970), cert. denied, 404 U.S. 947 (1971), and would defeat altogether the informing function of the warrant toward those subjected to search.[7] In *In re Lafayette Academy, Inc.*, 610 F.2d 1, 3 (1st Cir. 1979), the warrant by its terms allowed seizure from the school of almost any book or paper that was evidence of a violation of broad Federal statutes. However the affidavit supporting the warrant was much more specific about the documents to be seized. The officers had proceeded as though their authority was limited by the specifications of the affidavit, and the government argued that this should save the warrant and the search. The court disagreed. Without "words of incorporation and stapling the affidavit to the warrant," said the court, the

---

[6] See *United States* v. *Roche*, 614 F.2d 6, 8 (1st Cir. 1980); *In re Lafayette Academy, Inc.*, 610 F.2d 1, 5 (1st Cir. 1979); *United States* v. *Johnson*, 541 F.2d 1311, 1315 (8th Cir. 1976); *United States* v. *Marti*, 421 F.2d 1263, 1268 (2d Cir. 1970), cert. denied, 404 U.S. 947 (1971).

[7] It may be observed, incidentally, that some testimony at trial indicated that a few items were seized which did not belong to the Marsh brothers and presumably were not on the list.

warrant did not inform the school of the officers' precise powers and thereby of the bounds of the school's duty of submission; the "broadly worded warrant" created a potentiality of abuse that should void it despite the self-restraint of the officers in the given case. *Id.* at 5. On the same line, see *United States* v. *Roche,* 614 F.2d 6, 8 (1st Cir. 1980).[8]

The Commonwealth shifts gears to argue on a different basis. It chooses to assume that possession of the list by the officers at the search could piece out the inadequate warrant, and then says that the burden of demonstrating that the officers did not have the list should be cast on the de-

---

[8] To be distinguished from requirements of internal reference, attachment, and so forth, is the proposition that a facially sufficient but ambiguous description in a warrant may sometimes be supplemented by information in an unattached affidavit or personal knowledge of an executing officer. Usually the information supplied is not extensive; and there has been at least a good-faith attempt to prepare a sufficient warrant. See 2 W.R. LaFave, Search and Seizure § 4.5 at 74-77 (1978). In *Commonwealth* v. *Rugaber,* 369 Mass. 765, 767 (1976), the warrant had the correct address but an erroneous physical description of the house to be searched; any ambiguity was cured by directions by officers on the scene to the executing officers. We noted that the description was "not inadequate on its face," and that the address alone was a "sufficient description." *Id.* at 769. Although we have cited *Commonwealth* v. *Todisco,* 363 Mass. 445 (1973), above in this opinion and elsewhere (*Commonwealth* v. *Accaputo,* 380 Mass. 435, 446 [1980]), as according with the general rule that an attached and incorporated affidavit may supply specificity as to the place of search, the case can be assimilated to *Rugaber, supra.*

To be distinguished also is *Commonwealth* v. *Vitello,* 367 Mass. 224, 271-273 (1975), where we allowed an application for a wiretap warrant to supply the termination date for the tap, missing from the face of the warrant, without mention of whether the two papers were physically attached or served together. But a wiretap warrant usually is not served on the subject until the tap is over, see G. L. c. 272, § 99 L (1), (2), making its informational role less significant than is the case with the ordinary search warrant. The case of *United States* v. *Tortorello,* 480 F.2d 764, 780-781 (2d Cir.), cert. denied, 414 U.S. 866 (1973), considers the wiretap order together with the supporting papers in testing particularity, but *United States* v. *Marti,* 421 F.2d 1263, 1268-1269 (2d Cir. 1970), cert. denied, 404 U.S. 947 (1971), is opposed to such a procedure in the case of a nonwiretap warrant.

fendant, and on that matter the defendant offered no proof. This argument apparently attracted the trial judge.[9]

We have said that "the burden of establishing that evidence is illegally obtained" is on the defendant when the search is under warrant. See *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 56-57 (1974); *Commonwealth* v. *Fancy*, 349 Mass. 196, 202 (1965). This would seem to assign to the defendant challenging a search warrant the burden of persuasion and the "burden of going forward" as well. So it is when the claim is that the items seized exceeded those named on the warrant, see *Commonwealth* v. *Connolly*, 356 Mass. 617, 625, cert. denied, 400 U.S. 843 (1970); that the warrant was applied for by an unauthorized person, see *Commonwealth* v. *Bond*, 375 Mass. 201, 210 (1978); that the supporting affidavit contained material intentional misstatements, see *Commonwealth* v. *Reynolds*, 374 Mass. 142, 150 (1977); *Franks* v. *Delaware*, 438 U.S. 154, 156 (1978). But in each of the cases last cited, the warrant was sufficient, and the defendant's challenge was directed elsewhere.

We have not dealt with the question of burden when the Commonwealth rests a search on a warrant and the defendant claims the warrant is itself invalid. One would not expect the question to come up often, since, as we said in *Commonwealth* v. *Lepore*, 349 Mass. 121, 123 (1965), a warrant usually "speaks for itself" regarding the description of the place to be searched and the things to be seized, and there are no relevant factual matters left in dispute. See

---

[9] This is suggested by the style of the judge's finding at the conclusion of the suppression hearing that there was "no positive evidence that . . . the officers executing the warrant did not have a copy of that list with them during the search."

The Commonwealth mentions that there was some evidence at trial, through the testimony of Philip Marsh, that a list was present during the search; Philip did not say who had it. The matter was not pursued further at trial. Philip's testimony is irrelevant here because we must judge the motion to suppress solely on the record made at the suppression hearing. See *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 304 (1979); *Commonwealth* v. *Underwood*, 3 Mass. App. Ct. 522, 532 n.9 (1975).

*Commonwealth* v. *Jacobs*, 346 Mass. 300, 308 (1963) ("illegal generality [in description of items] was apparent from the warrant itself").

The Appeals Court seems to have taken the position that the Commonwealth bears the burden of persuasion when a warrant is attacked as invalid. Thus that court said that "[t]he Commonwealth has . . . not met its burden of showing that seizure of the items on the list was justified within the four corners of the warrant," 10 Mass. App. Ct. at 455, and that the document produced as the warrant at the suppression hearing only "purport[ed]" to be one. 10 Mass. App. Ct. at 454. This position has force: the situation may reasonably be assimilated to one in which the Commonwealth proceeds without a warrant, where it plainly bears the burden of persuasion to establish legality. See *Commonwealth* v. *Antobenedetto, supra* at 56-57 (1974). An alternative view would attach importance to the fact that there has been an authorization of search by an official, and it is fitting that the defendant should have to overcome its "presumptive" validity. Cf. 3 W.R. LaFave, Search and Seizure § 11.2, at 499 (1978).

For present purposes we need not choose between the alternatives. For even on the assumption more generous to the Commonwealth — that a defendant has the burden of persuasion when he challenges a warrant as intrinsically invalid — we think the defendant here sustained the burden provisionally when he established through the clerk and the executing officer just what the latter received as the purported warrant; the defendant had then gone as far as he need go to make his case; he need not negate the possibility that the warrant was later made good in some way (a matter, we may add, as to which the Commonwealth might be expected to be the better informed). It was up to the Commonwealth to go forward; failing which, the defendant was entitled to succeed.[10]

---

[10] On the indicated assumption, the burden of persuasion remains on the defendant throughout, but he has made out a "prima facie" case when

The Commonwealth seeks to characterize the present case as one involving mere "execution" of a warrant, and thereby to suggest that it might safely remain supine even after the defendant had proved an incomplete warrant.[11] The Appeals Court rightly rejected the characterization, 10 Mass. App. Ct. at 457. It was for the Commonwealth to go forward. In *United States* v. *Klein,* 565 F.2d 183 (1st Cir. 1977), the court held that a warrant which did not describe the objects to be seized with particularity could not be rehabilitated by a more detailed affidavit when the warrant did not refer to the affidavit, and when — what is relevant to the immediate issue — "[t]here is . . . *no evidence* on the record that the affidavit accompanied the warrant" (emphasis added). *Id.* at 186 n.3. Again in *State* v. *Christow,* 147 N.J. Super. 258, 260 n.1 (1977), a "sufficiently explicit" affidavit could not validate a warrant where there was "no evidence that the affidavit was attached to or accompanied the warrant when executed."[12]

---

he shows the warrant was incomplete; now it is up to the Commonwealth to present offsetting evidence if it can. As Shaw, C.J., put it in *Powers* v. *Russell,* 13 Pick. 69, 76 (1833): "Where the party having the burden of proof establishes a prima facie case, and no proof to the contrary is offered, he will prevail. Therefore the other party, if he would avoid the effect of such prima facie case, must produce evidence, of equal or greater weight, to balance and control it, or he will fail. Still the proof upon both sides applies to the affirmative or negative of one and the same issue, or proposition of fact; and the party whose case requires the proof of that fact, has all along the burden of proof. It does not shift, though the weight in either scale may at times preponderate." See also *Lawrence* v. *Commissioners of Pub. Works,* 318 Mass. 520, 526-527 (1945); *Smith* v. *Hill,* 232 Mass. 188, 190-191 (1919), aff'd, 260 U.S. 592 (1923); *Central Bridge Corp.* v. *Butler,* 2 Gray 130, 131-132 (1854); 9 J. Wigmore, Evidence § 2487, at 278-284; § 2489, at 285-286 (1940); W.B. Leach & P.J. Liacos, Massachusetts Evidence 50 (4th ed. 1967).

[11] On the same ground, the Commonwealth tries to fault the defendant on a procedural point. The defendant in his motion did not aver a defect of "execution" and therefore the Commonwealth claims he is barred under Rule 61 of the Superior Court (as it existed prior to amendment in September, 1980) from making any contention about the absence of the list in relation to the warrant.

[12] *Nunes* v. *Superior Court,* 100 Cal. App. 3d 915, 935-937 (1980), does characterize as a question of "execution" whether a list, incorporated by

2. *Further proceedings.*[13] The defendant argues that we ought to enter a judgment of acquittal, which would bar the possibility of retrial, if we decide, as we do, that the evidence seized under the warrant must be suppressed. This follows, he contends, from *Burks* v. *United States*, 437 U.S. 1 (1978), which held as a general proposition that the double jeopardy principle bars retrial when an appellate court overturns a conviction for insufficient proof.[14] We agree that with the seized evidence eliminated there would not be proof enough left in the record to sustain a conviction. But that does not necessarily lead to acquittal. For it may be open to the Commonwealth to point out that, had it thought the suppression motion could succeed, it might have come at the case in another way and established proof on a separate route sufficient to convict; and it may yet do so, if allowed a retrial. The Commonwealth can suggest that recognizing a right to acquittal by order of the appellate court in such circumstances would mean that the prosecution must cumulate its proofs at trial against the possibility that some trial ruling would be held wrong — a generally wasteful and frustrating procedure.[15]

---

reference in the warrant, was present during a search, but there "the evidence [was] clear" that the list was present, which the court accepted as curing any deficiency. There was no quarrel about burden of proof, and characterization was unimportant.

The parties have commented on the question of the legality of civilian participation in the search, assuming the warrant to be valid. As the warrant is held invalid, we do not reach the question.

[13] We agree with the Appeals Court that on the whole trial record (including the evidence that the judge declined to suppress) there was no such failure of proof on the "receiving" charge as to entitle the defendant to a directed verdict.

[14] See also *Greene* v. *Massey*, 437 U.S. 19 (1978) (applying principles of *Burks* to a State criminal proceeding); *Hudson* v. *Louisiana*, 450 U.S. 40 (1981) (same).

[15] The Appeals Court in the present case passed over the *Burks* question because it had not been argued, as it now has been. The question ultimately is constitutional. See *Commonwealth* v. *Diaz, ante* 73, 82 n.17 (1981), and cases cited. See also *Burks* v. *United States, supra* at 17; *Hudson* v. *Louisiana, supra* at 42-43. The Appeals Court referred also

Whether the Commonwealth could properly take such a position was a question raised and left open in *Greene* v. *Massey*, 437 U.S. 19, 26 & n.9 (1978), decided the same day as *Burks*; and we, too, noted and passed over the question in *A Juvenile* v. *Commonwealth (No. 2)*, 381 Mass. 379, 383 & n.5, cert. denied, 449 U.S. 1062 (1980), but not without saying that the cases after *Greene* were divided in their results,[16] and that several "well reasoned" decisions did not automatically bar retrial where an insufficiency of evidence appeared only when material held on appellate review to have been erroneously admitted was notionally removed from the case. We agree with the view expressed in those decisions, and as we cannot say, at the present stage and on

to the defendant's concession that there was evidence apart from the results of the October 21 search to link him to receiving goods stolen from the Marshes. But that related to a transaction in August, 1976, whereas the indictment recites "on or about October 21, 1976," and the evidence at trial was substantially restricted to the property seized in October.

[16] For decisions ordering acquittal in these circumstances (all with little discussion of the issues), see *In re M.L.H.*, 399 A.2d 556, 558-559 (D.C. 1979); *State* v. *Bannister*, 60 Haw. 658, 660-661 (1979); *State* v. *Alexander*, 281 N.W.2d 349, 354 (Minn. 1979); *Sloan* v. *State*, 584 S.W.2d 461, 472 (Tenn. Crim. App. 1979); *State* v. *Abel*, 600 P.2d 994, 999 (Utah 1979).

For cases holding retrial not barred (in general with discussion), see *United States* v. *Mandel*, 591 F.2d 1347, 1373-1374 (4th Cir.), rev'd in part on other grounds, 602 F.2d 653 (4th Cir. 1979) (en banc), cert. denied, 445 U.S. 961 (1980); *United States* v. *Block*, 590 F.2d 535, 543 (4th Cir. 1978); *People* v. *Sisneros*,    Colo. App.    ,    (1980) (606 P.2d 1317, 1319 [Colo. App. 1980]); *Hall* v. *State*, 244 Ga. 86, 93-94 (1979); *Irons* v. *State*,    Ind.    ,    (1979) (397 N.E.2d 603, 605-606 [Ind. 1979]); *Mulry* v. *State*,    Ind. App.    ,    (1980) (399 N.E.2d 413, 419 [Ind. App. 1980]); *Phillips* v. *Commonwealth*, 600 S.W.2d 485, 486-487 (Ky. App. 1980); *State* v. *Boone*, 284 Md. 1, 15-17 (1978); *DiPasquale* v. *State*, 43 Md. App. 574, 579 n.* (1979); *State* v. *Wood*, 596 S.W.2d 394, 397-399 (Mo. 1980) (en banc); *Ex Parte Duran*, 581 S.W.2d 683, 684-686 (Tex. Crim. 1979); *State* v. *Lamorie*, 610 P.2d 342, 347 (Utah 1980) (cf. *Abel* case cited in preceding paragraph); *State* v. *Frazier*,    W. Va.    ,    (1979) (252 S.E.2d 39, 53 [W.Va. 1979]).

The approach of this second group of cases is advocated in Comment, Double Jeopardy: A New Trial After Appellate Reversal for Insufficient Evidence, 31 U. Chi. L. Rev. 365, 371-372 (1964) (cited in *Burks* v. *United States*, 437 U.S. 1, 15-16 [1978]).

the present record, that the Commonwealth will be unable to make its proof without reference to the suppressed evidence, we simply reverse the judgment and set aside the verdict, and do not exclude retrial.[17]

*So ordered.*

---

[17] In *Commonwealth* v. *Silva*, 366 Mass. 402, 410-411 (1974), prior to *Burks*, we ordered the entry of a judgment of not guilty to a charge of possession of heroin with intent to sell after deciding that evidence of the heroin should have been suppressed. After *Burks*, in *Commonwealth* v. *Funches*, 379 Mass. 283, 295-297 (1979), we ordered judgments of not guilty after holding that the only evidence linking the two defendants to the crimes charged was inadmissible. Both cases are distinguishable from the present because in both "it [was] clear that the Commonwealth had no reasonable prospect of filling in the gap in its proof" at retrial. See *A Juvenile* v. *Commonwealth (No. 2)*, 381 Mass. 379, 383 n.5, cert. denied, 449 U.S. 1062 (1980) (explaining *Silva* and *Funches*).