COMMONWEALTH vs. LEO E. BROUILLET.

Worcester. May 4, 1983. — July 5, 1983.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Identification. Hypnosis. Evidence,* Hypnotically aided testimony.
*Constitutional Law,* Double jeopardy.

Where a victim's identification of a criminal defendant as the perpetrator
of an armed robbery and rape had been obtained only after hypnosis,
the principles expressed by this court in *Commonwealth* v. *Kater,* 388
Mass. 519 (1983), required that the identification be excluded from
evidence at the defendant's trial, and the admission of the victim's
identification testimony was error necessitating reversal. [607-609]
Where this court was unable to conclude that the Commonwealth had no
reasonable prospect of making out a prima facie case without certain
identification evidence that had been improperly admitted at a de-
fendant's original trial, it ordered a new trial rather than concluding
the proceedings in the defendant's favor. [609]

INDICTMENTS found and returned in the Superior Court
Department on April 15, 1981.

The cases were tried before *Travers, J.*

After review was sought in the Appeals Court, the
Supreme Judicial Court ordered direct appellate review on
its own initiative.

*Dennis J. Brennan* for the defendant.

*Harry D. Quick, III,* Assistant District Attorney, for the
Commonwealth.

NOLAN, J. The defendant appeals from convictions of ag-
gravated rape and unarmed burglary of a dwelling.[1] We
transferred the case from the Appeals Court sua sponte. He

[1] The defendant was also convicted of assault and battery, but because
the indictment was placed on file with the defendant's consent, the
conviction is not an issue before us. *Commonwealth* v. *Moran,* 388 Mass.
655, 656 n.1 (1983).

argues that the trial judge should have suppressed certain hypnotically induced evidence. On the strength of *Commonwealth* v. *Kater*, 388 Mass. 519 (1983), we agree and reverse the judgments.

We summarize the facts briefly. The victim was in her one-story house alone on Saturday night, November 1, 1980, in the small town of Templeton. Watching "The Love Boat" on television, the victim fell asleep on the couch. At some point the victim woke up and went to her bedroom to prepare for bed. While in her bedroom she heard a noise which emanated from the kitchen area. She walked to the kitchen door and saw that the outside storm door was open approximately two feet and that the inside door was also slightly open.[2] Thinking that the wind had blown the doors open, she unlocked the inside door at which time the door was pushed open and the victim was thrown to the floor. Lying on her back on the kitchen floor, the victim screamed and observed her assailant reaching with his left hand toward a chair where her pocketbook was hanging.[3] She began to struggle, but the assailant held her and placed a sharp object to her neck. The assailant took the victim to the bedroom, where he raped her.

The victim called her neighbor, who called the police. An Officer Manty arrived, and the victim related the events to Manty and described her assailant as wearing a black or dark blue nylon jacket, having earlobe length hair and a mustache, being approximately five feet seven inches tall and in his early twenties. Two days later she met with State Police Trooper Meier and she gave Meier the same description of her assailant.

Believing that the victim's recollection of the assault could be improved by hypnosis, Trooper Meier took the victim to a hypnotist. During this session, the victim was

---

[2] To gain entrance to the victim's house, one would open an outside storm door, enter a foyer, and then open a second door which led to the kitchen. The inside door had a chain lock.

[3] The victim testified that she kept a pair of scissors in her pocketbook.

shown a photo array which included a photograph of the defendant. Although the victim became distraught when she focused on the defendant's face, she could not make a positive identification. Eight days later, Meier conferred with the victim and showed her the same array of photographs that had been shown to her during the hypnosis session. The victim identified the defendant as her assailant.

A Worcester County grand jury indicted the defendant for aggravated rape, armed burglary of a dwelling, and assault and battery with a dangerous weapon. Prior to trial the defendant filed a motion in limine seeking a determination as to the reliability of the hypnotically enhanced testimony. A hearing was held,[4] and the judge ruled that, because hypnotism had no effect on the victim's recollection of the incident, the victim's testimony, including her identification of the defendant as her assailant, was admissible. The judge found that the hypnotic session merely "relax[ed]" the victim, allowing her to verbalize her recollection of the incident. The case was tried to a jury, and the identification was admitted. The jury convicted the defendant on the aggravated rape indictment, and on so much of the other two indictments as charged unarmed burglary and assault and battery. We reverse.

A discussion of the inadmissibility of hypnotically induced testimony is not necessary here because the case is controlled entirely by *Commonwealth* v. *Kater*, 388 Mass. 519 (1983), wherein we held that testimony from an hypnotized witness concerning matters not remembe.ed before hypnosis is inadmissible. *Id.* at 524-528. As in *Kater*, the judge in the case before us did not find whether the victim had been hypnotized. We assume, based on the record, that she was, in fact, hypnotized. Again, as in *Kater*, the judge found that the hypnotic sessions did not develop any additional substantial evidence which was not the product of unaided memory. "The burden of proof is, however, on the Commonwealth to show the reliability of the testimony

---

[4] The judge treated the motion as a motion to suppress.

of its witness who has been hypnotized." *Commonwealth v. Kater, supra* at 524, citing *Commonwealth* v. *A Juvenile,* 381 Mass. 727, 734 (1980). Moreover, we note that, prior to the hypnotic session, the victim did not identify the defendant as her assailant and that, after the hypnotic session, the victim did identify the defendant as her assailant. Thus, we can only conclude that the identification falls within the strictures of the *Kater* rule. The Commonwealth has not directed our attention to any agreement among experts in the field of hypnosis as to the reliability of such testimony. Therefore, *Kater* requires the exclusion of the victim's identification of the defendant. The judge was in error in admitting this evidence.[5]

The defendant argues that we should dismiss the indictment against him, which would bar the possibility of retrial. In *Burks* v. *United States,* 437 U.S. 1, 15-18 (1978), the Court held, as a general proposition, that the double jeopardy clause of the Fifth Amendment to the United States Constitution bars retrial when an appellate court reverses a conviction on the basis of insufficient evidence. As we noted in *Commonwealth* v. *Taylor,* 383 Mass. 272, 283-285 (1981), we agree with those cases which hold that the double jeopardy principle does not automatically bar retrial "where an insufficiency of evidence appeared only when material held on appellate review to have been erroneously admitted was notionally removed from the case." *Id.* at 284. See *id.* at 284 n.16, and cases cited. Moreover, we cannot say on the present record that the Commonwealth will be unable to meet its burden without referring to the identification. See *id.* at 284-285.

The victim, in a prehypnotic interview, gave a detailed description of her assailant. A woman who knew the defendant testified that, on the night of the assault, the defendant entered a social club in Templeton where she was

---

[5] The judge did not, of course, have the benefit of *Commonwealth* v. *Kater, supra,* at the time this case was tried. Thus, his action was not wholly unjustified. Indeed, given the law at that time, he followed the correct procedure in holding a hearing.

attending a party and stood by the door for approximately ten to fifteen minutes. The defendant admitted being there. Her description of the defendant matched the victim's description of her assailant. This woman testified that the defendant left the club at approximately 9:45 P.M. There was evidence that the distance from the social club to the victim's house was two and one-half miles. At 10:25 P.M., the victim called her neighbor, stating that she had been raped. The victim testified that the incident did not last very long. Moreover, the victim's pocketbook was found in the woods fifty yards off a cart path which runs from the victim's backyard to the road on which the defendant's house is located. Finally, the victim's glove was found at the mouth of this path.

We cannot conclude that the Commonwealth has no reasonable prospect of making out a prima facie case. Accordingly, we decline to dismiss the indictments. Rather, we reverse the judgments, set aside the verdicts, and remand the case for a new trial.

*So ordered.*