COMMONWEALTH *vs.* NANNETTE A. CALLAHAN.

No. 95-P-1376.

Norfolk. April 16, 1996. - October 3, 1996.

Present: WARNER, C.J., ARMSTRONG, & KASS, JJ.

*Search and Seizure,* Warrant, Affidavit. *Constitutional Law,* Search and seizure.

In a criminal case in which the defendant was charged with conspiracy and possession of amphetamine with intent to distribute, the judge correctly allowed the defendant's motion to suppress evidence seized pursuant to an anticipatory warrant which did not state with sufficient particularity the event the occurrence of which would make the warrant properly executable [422-424]; the lack of any language describing a triggering event was not cured by limiting language in the affidavit where the affidavit was not attached to or served with the warrant and clearly referenced therein [424-428].

COMPLAINT received and sworn to in the Quincy Division of the District Court Department on August 31, 1994.

A pretrial motion to suppress evidence was heard by *Rosemary Minehan, J.*

*Robert C. Cosgrove,* Assistant District Attorney, for the Commonwealth.

*Robert S. Cohen* for the defendant.

WARNER, C.J. The defendant was charged with conspiracy to violate the controlled substance law, G. L. c. 94C, § 40, and possession of a class B substance with intent to distribute, G. L. c. 94C, § 32A. The defendant moved under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights to suppress evidence seized pursuant to an anticipatory warrant. A District Court judge granted the motion, and the Commonwealth appealed. By an order of June 6, 1996, we remanded the case for additional findings on the issue of the execution of the warrant and retained jurisdiction. An eviden-

tiary hearing was held on June 13, 1996, and the judge thereafter filed amended findings. The parties have filed memoranda of law addressing those findings. We now affirm the order granting the motion to suppress.

Following both the original and supplementary evidentiary hearing, the following facts were found. The affidavit in support of the warrant revealed that the Quincy police department's narcotics unit received information through United States Customs officers assigned to the United Parcel Service (UPS) facility in Louisville, Kentucky, that the customs agents had intercepted a package shipped from Poland containing controlled substances in the form of 1,950 white tablets.[1] A sample of those tablets tested positive for amphetamines. The affidavit also disclosed that there would be a "controlled delivery" of the package to Aneta Allen[2] at Freddy's Cycle Center located at 92-94 Franklin Street, Quincy, at a specific time, according to UPS delivery schedule. The affidavit further indicated that "said search warrant shall not be executed until such time [as] the controlled delivery and voluntary acceptance of the package is completed."

In addition, the affidavit explained that the affiant learned, while personally observing the package and contents, that the tablets violated several Federal laws, "18 U.S.C. 545, 21 U.S.C. 952, 319 C.F.R. 162, § 45(A)," and Massachusetts law, G. L. c. 94C. The affiant also stated that he would observe the re-wrapping of the package prior to its controlled delivery in order to confirm what the package contained.

Based on the above information, a warrant was issued. The warrant was in a standard form and did not include what triggering event had to occur before the search would be

---

[1]The report of the agent who searched the package, and which is partly incorporated into the affidavit, explains that Poland is "a country that has increasingly become a source of narcotics" and that the package was selected for intensive inspection. The defendant has not raised any issue with respect to the initial search or seizure of the package.

[2]While the package was addressed to Aneta Allen, the anticipatory warrant allowed the executing agent to search *any* person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered. Thus, the warrant allowed the executing agent to search Nannette A. Callahan, the defendant.

done.[3] It recited that it was to be executed "within a reasonable time and in no event later than seven days from . . . issuance." The day after the warrant's issuance, an employee of UPS delivered the package to Freddy's Cycle Center. The search warrant was executed shortly thereafter.

The affiant brought the affidavit in support of the warrant to the search warrant team (team)[4] on the day of the warrant's execution. The affidavit was read during the briefing by two Quincy police detectives, and the U.S. Customs agents, and reviewed by the affiant at that time. The team was specifically instructed that after the controlled delivery of the package and after the UPS agent left the premises and indicated who had accepted the package, the warrant would be *immediately* executed.

The execution of the search went as follows. The team proceeded to the locus of the search, and surveillance was set up. A UPS agent brought the package to the store, and the defendant offered to accept it. After receiving the $68 delivery charge and after observing the defendant place the package on an office desk, the UPS agent left the property and spoke to the affiant.

The affiant obtained a description of both the defendant and the location of the package and procured the delivery acknowledgment receipt. The affiant then informed the other members of the team, and the warrant was executed within three to five minutes of the delivery. Upon entering the premises, the team declared their purpose and found the defendant and the package. A copy of the search warrant was given to the defendant and she was shown the delivery receipt. A copy of the affidavit was not attached to the warrant, although the affiant did have a copy of the affidavit in his back pocket. The affidavit was not shown to the defendant.

The Commonwealth now argues that the judge erred in allowing the motion to suppress because the warrant's lack of a triggering event was, in the circumstances, cured. For her part, the defendant initially offered three grounds to sustain

---

[3]The form contained the phrase: "Proof by affidavit, which is hereby incorporated by reference, has been made this day and I find that there is Probable Cause . . . ."

[4]The team consisted of at least four Quincy police detectives, including the affiant, Detective Glynn, U.S. Custom agents, and an unknown number of uniformed Quincy police officers.

the judge's ruling, two of which, lack of a signed authorization for the appeal and lack of probable cause for the search, we disposed of in our order of June 6.[5] The defendant meets the Commonwealth's argument by contending that there was no cure; that the anticipatory warrant was fatally defective because it failed to forge a sufficient link between the arrival of the contraband and the proposed search of the defendant's store. We agree.

In *United States* v. *Ricciardelli*, 998 F.2d 8 (1st Cir. 1993),[6] the court addressed issues surrounding the use of anticipatory warrants, focusing on the potential for abuse in the execution of such warrants, as they are conditioned on future events. The court remarked that agents executing anticipatory warrants, unlike traditional warrants, are called upon "to determine when and whether the triggering event specified in the warrant has actually occurred." *Ricciardelli*, 998 F.2d at

---

[5]As noted in that memorandum, the defendant's contention that the failure of the Commonwealth to comply with the mandate of Mass.R.Crim.P. 15(a)(3)(B), 378 Mass. 883 (1979), requires that the appeal be dismissed, is without merit. In *Commonwealth* v. *Rosenfield*, 20 Mass. App. Ct. 125, 127 (1985), we held that a notice of appeal, signed by an assistant district attorney and filed within two days after the relevant order — the procedure followed by the assistant district attorney here, suffices as the necessary authorization under rule 15(a)(3).

We also discussed in the memorandum the defendant's contention that the affidavit supporting the warrant was defective because it was based on totem pole hearsay. Here the motion judge held, and we agree, that, unlike *Commonwealth* v. *Rossetti*, 349 Mass. 626, 632-633 (1965), there was sufficient information from which the magistrate could properly issue the warrant; the affidavit was based on information obtained by the affiant from third parties *and the affiant's personal observations* of the contraband. Furthermore, in this case, again in contrast to *Rossetti*, there was ample information included in the affidavit regarding the basis of the information from third parties relied upon by the affiant. Thus, there was probable cause to issue the warrant.

[6]That case involved a defendant whose name appeared on a customer list of a suspected Houston pornography distributor. In a sting operation, postal inspectors formed a fictitious company that forwarded Ricciardelli a catalog from which he placed an order. On the day prior to the scheduled delivery, the postal inspectors secured a search warrant authorizing the investigators to search the defendant's residence for, inter alia, correspondence, documents, and objects related to contacts with either the fictitious company or the Houston company. The defendant was indicted and convicted of knowingly receiving child pornography through the mail. He successfully appealed the conviction on the ground that the warrant did not describe with sufficient particularity its triggering event.

12. Consequently, the court noted that magistrates issuing such warrants must be "particularly vigilant in ensuring that the opportunities for exercising unfettered discretion are *eliminated*" (emphasis added). *Ibid.* The magistrates issuing such warrants must, therefore, set conditions governing the warrants that are "explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents." *Ibid,* quoting from *United States* v. *Garcia,* 882 F.2d 699, 703-704 (2d Cir.), cert. denied, 493 U.S. 943 (1989).

The *Ricciardelli* court found that the warrant there did not include "explicit, clear and narrowly drawn" conditions governing the execution of the search. Instead, the warrant merely stated that it would not be effective "until after delivery by mail to and receipt by [the defendant] of the package containing the videotape." *Ricciardelli,* 998 F.2d at 9. The court considered that this language left far too much discretion to the executing agent. For example, the court observed, if Ricciardelli obtained the package from the post office, instead of at the search locus — his home — the executing agent could have searched his abode whether or not he brought the contraband there. *Id.* at 13.

To aid in eliminating the potential for abuse of discretion by executing agents, the *Ricciardelli* court held that specific conditions must be inserted into anticipatory warrants. The court mandated the inclusion of language that (1) "restrict[s] the officers' discretion in detecting the occurrence of the [triggering] event to almost ministerial proportions"; and (2) makes the search of the destination expressly contingent upon the contraband's "sure" arrival there. *Id.* at 12.

The Commonwealth argues that, notwithstanding the infirm warrant, the executing officer ensured that there was no abuse of discretion in this case, and thus, the fruits of the search were properly seized without Fourth Amendment violations.[7] The Commonwealth points to the following "compelling" facts, which the judge found: (1) the affiant was the executing officer and thus defined the triggering event himself; (2) the affiant brought the affidavit to the locus on the day of the warrant's execution; (3) the affiant reviewed the affidavit,

---

[7] In *Ricciardelli,* too, there was no abuse of discretion by the agents in the execution of the warrant; however, the court found that since the warrant *allowed for the potential of abuse,* the fruits of the search must be suppressed. *Ricciardelli,* 998 F.2d at 13.

and had it read out loud to the search team; (4) the affiant verbally instructed the team as to the triggering event; and (5) the affiant was the person who determined that the triggering event specified in the affidavit had actually occurred before initiating the search.

However, self restraint on the part of the executing officer does not erase the fact that under the defective warrant, "[the searched persons] were subject to a greater exercise of power than that which may have actually transpired and for which probable cause had been established." *In re Application of Lafayette Academy*, 610 F.2d 1, 5-6 (1st Cir. 1979)(held where warrant omitted *specific* items to be seized, and executing agents only searched and seized appropriate items, items should still be suppressed because warrant allowed undue discretion to agents). See also *United States* v. *Roche*, 614 F.2d 6, 7-8 (1st Cir. 1980)(same). It is this *potential* for abuse by agents which the triggering event requirements help deter.

Here, as in *Ricciardelli*, it is easy to imagine how a warrant lacking in sufficient triggering event language could have enabled the agents to search the locus regardless of whether the contraband was brought there upon its acceptance. The warrant in this case, lacking in *any* triggering event language, affords even greater discretion to the executing officers, allowing the agent to search well before or after the contraband was intended to have arrived at the locus. An anticipatory warrant that "cedes such great discretion to the executing agents cannot withstand constitutional scrutiny." *Ricciardelli*, 998 F.2d at 13.

Further, this case is not like *United States* v. *Gendron*, 18 F.3d 955 (1st Cir.), cert. denied, 513 U.S. 1051 (1994), in which the court determined on similar facts to *Ricciardelli*,[8] that an anticipatory warrant, omitting an explicit triggering event, led to a legal search. There, the court grappled with whether ambiguous triggering event language in the warrant, authorizing the search "after delivery by mail to and receipt by [the defendant]," *id.* at 965, met the "explicit, clear and narrowly drawn" standard, required by *Ricciardelli*.

---

[8]*Gendron* also involved a defendant who ordered and received a videotape containing child pornography from a company that was part of a sting operation. The defendant was convicted of illicit receipt of child pornography. Though the wording of the warrant closely resembled the wording of the *Ricciardelli* warrant, and though the defendant echoed Ricciardelli's argument on appeal, the defendant was unsuccessful.

The court, avoiding a "hypertechnical" reading of the warrant, concluded that where the warrant contained *some* triggering event language, even where it might be ambiguous, the explicit meaning of the limiting words could be clarified upon reading the words in the context of the rest of the warrant and its supporting affidavit. *Gendron*, 18 F.3d at 966-967. In that case, where the rest of the warrant detailed both the locus of the search, the home, and the "routine delivery" of the object to the home, and the supporting affidavit contained the required triggering event language,[9] the court found the limiting language in the warrant to be sufficiently explicit. *Gendron*, 18 F.3d at 967.

While this case, like *Gendron*, involves an affidavit that includes the "explicit" triggering event language required by *Ricciardelli*, what is missing here is the second critical *Gendron* factor — a *warrant* that includes *some* triggering event language limiting the discretion of the police. Here, where there is *no* language within the warrant limiting the agent's search, there is no reason to look at the underlying affidavit for clarification purposes, regardless of the comprehensive nature of the affidavit. It is the "*warrant* [that] must clearly say when it takes effect" (emphasis added). *Gendron*, 18 F.3d at 965.

In addition, the defendant persuasively argues that the fact that the affidavit, which included the triggering event language, was brought to the locus does not cure an infirm warrant where the affidavit was neither attached to nor served with the warrant. See *Commonwealth* v. *Taylor*, 383 Mass. 272, 276-278 (1981), and cases collected.[10] Contrast *Com-*

---

[9]There, the affidavit stated that probable cause to search would arise only "after the parcel has entered the premises." *Id*. at 967.

[10]Some other jurisdictions have permitted an unattached document referred to in the warrant but not tendered with it to supply specificity where the document was brought to the locus. See *Taylor*, 383 Mass. at 277, and cases collected. See also *United States* v. *Moetamedi*, 46 F.3d 225, 227-229 (2d Cir. 1995). Here, where the document was not attached, we need not decide whether to allow a separate document to supply specificity where it is attached, but not referred to therein. See *Commonwealth* v. *Taylor*, 383 Mass. at 277 n.5, citing *Castle News Co.* v. *Cahill*, 461 F. Supp. 174, 181 (E.D. Wis. 1978). See note 12, *infra*.

monwealth v. *Soares*, 384 Mass. 149, 152, 155 (1981), a case also preceding *Ricciardelli* and *Gendron*.[11]

This is the first time we address squarely whether an affidavit containing the triggering event language but not attached to the warrant can cure the lack of such language in the warrant. We look to the reasoning provided in similar cases involving whether affidavits including another vital piece of information, the particularity requirements, can save warrants which fail to describe sufficiently the item(s) to be seized or place(s) to be searched. *Ricciardelli*, 998 F.2d at 12. *Gendron*, 18 F.3d at 966. See, e.g., *Commonwealth* v. *Taylor*, 383 Mass. at 278 (items); *Commonwealth* v. *Todisco*, 363 Mass. 445, 449 (1973) (place). See also 2 LaFave, Search and Seizure §§ 4.5(a), 4.6(a) (1996).

In those cases where a warrant omits a critical piece of information, the requirement of informing the searched party of the underlying affidavit, and of the vital information therein, not only serves to control the executing officers but also informs the person affected of the limits of the officer's authority. See *Commonwealth* v. *Taylor*, 383 Mass. at 278; *United States* v. *Roche*, 614 F.2d at 8-9. Thus, when the affidavit is attached to *and* clearly referenced in the infirm warrant, the opportunity for constitutional violations should be no greater than that present in a search made pursuant to a warrant which details the triggering event.[12]

Yet, in this case where: (1) the warrant lacked a triggering event; (2) the affidavit remained in the officer's back pocket

[11]Admittedly, the *Soares* decision (384 Mass. at 155), preceding *Ricciardelli* and *Gendron* by more than a decade, recites only that it is "preferable" that an anticipatory warrant define the triggering event with "reasonable precision." See *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 n.1 (1995). There is no mention of *Taylor*, decided some three months earlier. It is unclear in *Soares* whether the affidavit defining the triggering event was attached to the warrant (it was attached to the application). *Soares* also involved a controlled delivery but the anticipatory warrant there recited that it (the warrant) was to be executed "immediately." The court held that this did not make the resulting search unlawful, noting the affidavit stated that "delivery of the contraband and the search would follow without delay upon the issuance of the warrant." 384 Mass. at 155. Thus, unlike the present warrant, the warrant in *Soares* was barely anticipatory and allowed no potential for abuse.

[12]We do not consider the warrant significantly aided in this respect by the presence of printed form language referencing the affidavit in the context of a purported finding of probable cause. Note 3, *supra*. Such a reference

during the entire search; and (3) the existence of the affidavit was not mentioned to the defendant, there was little opportunity for her to learn of the mandatory triggering event initiating the search. In short, assuming that knowledge of the affidavit in fact circumscribed the discretion of the executing officers, the second purpose of delineating the triggering event, curbing the potential for overreaching by informing the person affected of the limits of the officer's authority, was not met. See *Roche*, 614 F.2d at 8. The warrant, therefore, created a potential for abuse that voids it, and the fruits seized pursuant to it must be suppressed. See *Commonwealth* v. *Taylor*, 383 Mass. at 279.

> *Order allowing motion to*
> *suppress affirmed.*

---

does not alert the reader to the fact that the warrant is anticipatory and that the affidavit contains critical language defining the triggering event.