Connolly, J.
The defendant, Lee White, is charged with armed assault with intent to murder (G.L.c.265, § 18(b)), assault and battery by means of a dangerous weapon (G.L.c.265, §15A), possession of a firearm in the commission of a felony (G.L.c. 265, §18B), possession of a firearm without a licence (G.L.c. 269, §10(a)), and possession of ammunition while not having been issued a firearm identification card (G.L.c. 269, § 10(h)). Defendant moves to suppress evidence seized in plain view when police, pursuant to a warrant, searched defendant’s residence at 159 West Springfield Street, apartment D. Defendant claims the items were seized in violation of his rights to be free from unreasonable searches and seizures pursuant to the Fourth Amendment of the United States Constitution and Article 14 of the Massachusetts Declaration of Rights. On October 15, 1999, this court conducted a hearing on defendant’s motion to suppress. For the following reasons, this court DENIES defendant’s motion to suppress evidence.

FINDINGS OF FACT

On February 5, 1999, on the basis of an affidavit submitted by Detective Andrew Gambon [the affiant], the Commonwealth issued a warrant to search defendant’s apartment at 159 West Springfield Street, apartment D, for clothing and a small gun. Pursuant to the warrant, executed on February 6, 1999, officers seized one pair of black levi dungarees, one black leather coat, and two notebooks and papers. The following facts are a summary of the allegations made in the affidavit.
On January 22, 1999, át around four o’clock in the afternoon, a fight between two groups of youths took place inside the Copley Place Mall [Mall], whereby one youth was stabbed and another youth was shot. In response to the incident, Detective Thomas Connolly and the affiant arrived at Yarmouth Street at approximately four-thirty that afternoon. Upon arrival, they saw Christopher Martin [Martin], who had suffered a gun shot wound to the neck, being placed in an ambulance. Martin indicated he was shot in the Mall.
After having searched both Yarmouth Street and inside the Mall, the affiant failed to find any physical evidence of the crime. Witnesses, however, told the affiant that a fight broke out between two groups of youths inside the Mall, during which one youth had a knife and that it ended when the sound of a gunshot caused all the youths to run away.
At five o’clock that day, Detectives William Hill [Hill] and William Tracy [Tracy], went to the Boston Medical Center to interview Martin. Martin identified Dennis Parham [Parham] as the person who shot him. Subsequently, Parham was arrested that day at six-thirty p.m. At seven o’clock that night, the affiant also interviewed Martin at the Boston Medical Center. Martin told the affiant that he had a knife during the fight and that during the fight he saw Parham reach for something around his waistband area. Believing he was reaching for his gun, Martin stabbed Parham. After this, Martin was attacked by several other youths who ran away after he heard a pop and felt pain in his neck. Martin told the affiant he was unaware of who shot him, although, previously he had told Detectives Hill and Tracy that Parham was the shooter.
A Suffolk County Grand Jury John Doe investigation was conducted during which the affiant re-interviewed Martin as well as other people who were identified as being with Martin at the Mall, including Jamie Campbell [Campbell], Sean Meadows [Meadows] and Cedrick Phillips [Phillips]. Although Martin stated on February 2, 1999, that the shooter was Parham, Martin once again stated he did not know who shot him in the neck. Martin said that he was shot from behind, and that he is certain that Parham was somewhere in front of him at the time of the shooting.
On February 2, 1999, Campbell alleged he saw the individual who shot Martin. From an array of photographs presented by the affiant, Campbell selected defendant’s photograph. Campbell stated he knew defendant and that he saw him shoot Martin. Campbell described the gun that defendant allegedly used, as a small caliber chrome handgun with a pearl handle.
On February 3, 1999, Meadows told police he also saw the shooting, and that the shooter was someone other than Parham. Meadows described the shooter as *686 a clean shaven, five-foot, nine-inch dark-skinned male, with a chunky build. He stated the shooter was wearing a black sweatshirt with an attached hood, black jeans and a black leather jacket. Meadows stated the gun was small and shiny with a white handle. The affiant confirmed that the description given by Meadows matched that of defendant who is in fact a five-foot, ten-inch dark-skinned male who weighs approximately 180 pounds.
Finally, on February 4, 1999, Phillips stated he saw the shooter and could identify him because he had seen him before. From a photo array, Phillips selected defendant’s photograph and identified him as the person who shot Martin. Each of these witnesses testified to these facts before the Grand Jury.
In his affidavit, the affiant stated that from his experience and training he has learned that handguns are a valuable commodity on the streets, and that many of them are illegally possessed. The affiant explained that generally, persons who possess handguns tend to store them in their homes for both privacy and security reasons, and that such guns are usually kept inside containers to prevent their discovery by other persons. In addition, the affiant stated that personal items and clothing are usually kept in a person’s residence as well.
Within a week of submitting the affidavit, the affiant personally went to 159 West Springfield Street, apartment D, where he saw defendant. Also, the affiant spoke with defendant’s probation officer, John Turner of the Boston Municipal Court, who confirmed 159 Springfield Street, apartment D as defendant’s current place of residence. On the basis of this information in conjunction with the witnesses’ testimony, the affiant stated there was probable cause to search defendant’s residence for the handgun used to shoot Martin, the clothing described by the witnesses, and all related evidence relevant to the investigation.
On February 5, 1999, the Commonwealth issued a warrant to search defendant’s apartment. The warrant authorized police to search apartment D at 159 Springfield Street, for a “small caliber firearm (chrome with pearl handles - silver with white handles) exact caliber unable to be determined because bullet still lodged in victim’s neck. Clothing - black coat, black hooded sweatshirt, black pants.”
On February 6, 1999, at 9:45 a.m., police executed the warrant to search defendant’s apartment. Defendant was not present in the apartment during the time of the search, but his aunt and mother were. They indicated which bedroom was defendant’s. While searching defendant’s bedroom for the items listed on the warrant, Detective Richard Walsh came across a black notebook with “Hornets Mobb Squad,” “South End,” and “Killa Beez” written on its cover. He recognized these names as those of known Boston gangs. Defective Walsh picked up the notebook, leafed through it, and determined that the notebook was important to his investigation. Detective Walsh then proceeded to search the room for the gun listed on the warrant. Doing this, he came across a blue notebook to the left of defendant’s bed with defendant’s name written on it. He picked up the book, leafed through it, and determined it was similar to the black notebook he had just found. No firearms were discovered in defendant’s bedroom or apartment. The search warrant return states that police seized one pair of black Levi dungarees, one black leather coat and two notebooks and papers.
RULINGS OF LAW
Defendant moves to suppress the two notebooks and papers on the basis that they were seized by Boston Police outside the scope of the warrant. Defendant states the warrant lacked adequate particularity of description of the items seized. Items to be seized pursuant to a warrant must be described with adequate particularity. Fourth Amendment to the United States Constitution; Article 14 of the Massachusetts Declaration of Rights; G.L.c.276, §2; Commonwealth v. Cefalo, 381 Mass. 319, 330 (1980). The purpose of this requirement is to protect citizens from unreasonable searches and seizures conducted under a general warrant. Article 14 of the Massachusetts Declaration of Rights; Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). Thus, the items which are seized must be justified on the four corners of the warrant. Commonwealth v. Taylor, 10 Mass.App.Ct. 452, 455 (1980). In the present case, it is clear that the notebooks were not listed on the warrant. Also, there is no indication that the notebooks come within the purview of the items listed on the warrant.
Furthermore, a search pursuant to a warrant includes searching through all reasonable places, including any area or container, where the object of the search may be found. Commonwealth v. Wills, 398 Mass. 768, 774 (1986) (holding that a search for a knife or material used to treat wounds may reasonably be found inside a photo album); Commonwealth v. Lett, Mass. 141, 147-48 (1984). Here, it was unreasonable for police to search for guns or clothing inside a notebook. Commonwealth v. Fernandez, 30 Mass.App.Ct. 335, 340-41 (1991) (stating that searches must be conducted reasonably). Therefore, the seizure of the notebooks occurred outside the warrant’s scope and, as such, the seizure is not justified under its four corners. Commonwealth v. Taylor, supra at 455.
Next, defendant claims the Commonwealth failed to meet its burden of showing the seizure of the notebooks is justified under the plain view doctrine. Where a seizure falls outside the scope of a warrant, it may be justified by an exception to the warrant requirement. Commonwealth v. D’Amour, 428 Mass. 725, 730 (1999). The Commonwealth bears the burden of justifying the seizure of items that are not listed on the warrant. Horton v. California, 496 U.S. 128, 133-140; *687 Commonwealth v. Wilson, 427 Mass. 336, 343-44 (1998); Commonwealth v. LaPlante 416 Mass. 433, 439 (1993); Commonwealth v. Cefalo, 381 Mass. 319, 330 (1980). The plain view doctrine is an exception to the warrant requirement that allows officers to seize items found in plain view pursuant to a lawful search. Commonwealth v. Accaputo, 380 Mass. 435, 447-50 (1980). A seizure of items in plain view is justified if officers are lawfully present, the item is found inadvertently, and its criminality is immediately apparent. Commonwealth v. D'Amour, supra at 730-31; Commonwealth v. Accaputo, supra at 447-50 (adopting a three-part test established by the Supreme Court in Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)).

A. The Black Notebook

Defendant states that the black notebook was not lawfully seized because the Commonwealth failed to satisfy the three-prong test of the plain view doctrine. Commonwealth v. D'Amour, supra; Commonwealth v. Accaputo, supra. For the first element of the test, all that is required to justify officers’ presence in defendant’s bedroom is a valid search warrant. Commonwealth v. D'Amour, supra at 731. Such is the case here, as officers were present in defendant’s bedroom under a valid warrant authorizing them to search for a gun and clothing. “An executing officer has a lawful right of access to the object seized if the terms of the warrant entitle him to search where the object is found.” Id. Citing United States v. Menon, 24 F.3d 550, 559 (3d Cir. 1994). Here officers, who acted under a valid warrant’s authorization to search defendant’s bedroom for clothing and a gun, found the black notebook on top of defendant’s bed. A reasonable search for clothing and a gun includes looking on defendant’s bed. Id. Commonwealth v. Lett, supra at 143 (holding the items seized in “plain view were seized within the scope and intensity of the search permitted under the terms of the valid portions of the warrant”). Therefore, officers were lawfully present and had a right of access to the black notebook when it was found.
In addition, the Commonwealth bears the burden of showing the officers’ discovery of the item was inadvertent. Commonwealth v. D'Amour, supra; Commonwealth v. Accaputo, supra. The inadvertence requirement is satisfied if police lacked probable cause to believe that they would find the items at issue prior to entering the apartment to be searched. Commonwealth v. Santana, 420 Mass. 205, 211 & n.6 (1995); Commonwealth v. Cefalo, supra at 331. The purpose of the inadvertence requirement is to “lend[ ] credibility to the [plain view] doctrine by ensuring that only evidence which the police did not anticipate or know to be at the locus of a search will be seized without a warrant.” Commonwealth v. D'Amour, supra at 732; Commonwealth v. Moynihan, 376 Mass. 468, 473 (1978), citing Commonwealth v. Walker, 370 Mass. 548, 557, cert. denied, 429 U.S. 943 (1976).
Clearly the officers who conducted the search of defendant’s bedroom could not reasonably have anticipated finding a notebook with gang insignias written on its cover on defendant’s bed. Coolidge v. New Hampshire, supra at 467 (defining “inadvertence” as not knowing in advance the location of the evidence with the intent to seize it).[1] Here, there is no evidence to suggest that officers knew they would find a gang-related black notebook in defendant’s room, nor that they intended to seize it prior to entering defendant’s apartment.
Although officers were aware defendant was a member of the “Mass Ave Hornets,” this knowledge does not defeat the inadvertence requirement to the plain view doctrine. “The inadvertent discovery demands that if the police have probable cause to search for an item, and are thus systemically looking for it, they must mention it in their warrant or forfeit its admission in evidence.” Commonwealth v. Lett, supra at 147 (holding that plain view requires only that police reasonably search those areas where they can expect to find the items listed under the warrant) (emphasis supplied). Here officers were not systemically looking for any of defendant’s notebooks. Moreover, the black notebook was found pursuant to a reasonably conducted search of defendant’s bedroom. Commonwealth v. Lett, supra at 147. Accordingly, officers inadvertently found the black notebook.
The criminality requirement is met if officers have probable cause to believe that what they see is contraband, Commonwealth v. Varney, 391 Mass. 34 (1984), Sullivan v. District Court of New Hampshire, 384 Mass. 736 (1981), Commonwealth v. Accaputo, supra, or that the item is evidence related to the criminal activity under investigation. Commonwealth v. D'Amour, supra at 732 (1999). Prior to the search, officers were aware that defendant was a member of the gang variously known as “Mass Ave Hornets,” “the Mobb Squad,” or “Killa Beez.” Those are the names Detective Walsh saw written on the front of the black notebook lying in plain view on the top of defendant’s bed. In addition, officers knew that the shooting at the Mall occurred as a result of gang rivaliy. Thus, when Detective Walsh scanned the face of the black notebook, it became immediately apparent that he had stumbled on evidence plausibly related to the criminal activity the officers were investigating. Id.; Commonwealth v. Bond, 375 Mass. 201, 206 (1978) (holding mere evidence maybe seized only if officers recognize it as reasonably related to the known criminal activity). Therefore, the criminality requirement of the plain view exception is met. Accordingly, under the plain view doctrine the seizure of the black notebook is valid.
In addition, the black notebook in plain view may be seized as evidence to show “who lived in or controlled the apartment.” Commonwealth v. Young, 382 Mass. 448, 458 (1981). The Supreme Judicial Court has held that to show control over the premises police may seize “envelopes, personal books of telephone numbers, notebooks, utility bills, and photographs, noticed in the course of lawful searches, . . . properly *688 taken in ‘plain view.’ ” Id. (Emphasis supplied.) The ultimate test is “whether the materials will aid in ‘a particular apprehension or conviction.’ ” Commonwealth v. Lee, 2 Mass.App.Ct. 700, 703 (1974) (holding as valid a seizure of defendant’s personal papers found in plain view while officers were searching for narcotics pursuant to a valid warrant); quoting Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 307 (1967). Therefore, papers found in plain view pursuant to a search conducted under a valid warrant may be seized by officers to establish defendant’s connection and control over the premises. Id.
Finally, defendant claims officers were required to get a separate warrant to open the black notebook. In doing so, defendant cites Oregon state law. Massachusetts does not require an additional warrant to open a notebook found in plain view that an officer plans to seize. Commonwealth v. Young, supra at 458-59. In Young, the Supreme Judicial Court, referring to a plain view seizure of an item showing defendant’s control over the premises, explained that “once an item or collection is observed whose general character plausibly indicates evidential relevance, an officer may approach more closely ... to note some of the details and on that basis to make a selective seizure.” Commonwealth v. Young, supra at 458-59. In examining the object to determine whether it should be seized, officers may not cause a material intrusion such as opening “closed drawers, or locked suitcases.” Commonwealth v. Young, supra at 459. Here no such intrusion exists, as opening a black notebook with street gang names on its cover found in plain view is a reasonable minimal intrusion. Accordingly, since all three elements of the plain view exception are met and the notebook was reasonably inspected, officers were justified in seizing the black notebook. Therefore, the black notebook will not be suppressed.
B. The Blue Notebook
The second item defendant seeks to suppress is a blue notebook found by police in defendant’s bedroom. After finding the black notebook, officers found a blue notebook on a speaker near the closet in defendant’s bedroom. Defendant’s name was written on the notebook’s cover. Defendant claims the blue notebook should be suppressed because its seizure is unjustified under both the terms of the warrant and the plain view doctrine. As previously determined, the seizure of the blue notebook was not justified under the four corners of the warrant, Commonwealth v. Taylor, supra, nor was it justified as an item searched within the scope of the warrant. Commonwealth v. Fernandez, supra; Commonwealth v. Wills, supra. Therefore, the Commonwealth bears the burden of justifying its seizure under an exception to the warrant requirement. Horton v. California, supra at 133-40; Commonwealth v. Wilson, supra at 343-44; Commonwealth v. LaPlante, supra at 439.
The Commonwealth states that the seizure of the blue notebook is justified as an item found in plain view which establishes defendant’s control over that area of the premises. Commonwealth v. Young, supra. The affiant found the blue notebook in plain view on top of a speaker located to the left of defendant’s bed. Under these facts, all three requirements to the plain view doctrine are met. Commonwealth v. Accaputo, supra; Commonwealth v. Cefalo, supra at 331. First, police were lawfully present pursuant to a warrant authorizing them to search defendant’s room for clothing and a gun. Thus, it was reasonable for officers to look on top of a speaker that was openly placed in defendant’s room. Commonwealth v. Lett, supra at 143. Second, the item was inadvertently discovered because officers were not aware they would find it prior to entering defendant’s apartment. Commonwealth v. Santana, supra at 211; Commonwealth v. Cefalo, supra at 331. Finally, the evidential relevance of the item was immediately apparent as an item that showed defendant’s control over the premises. Commonwealth v. Alvarez, 422 Mass. 198, 206 (1996) (stating that police properly seized keys because they had a reasonable basis to conclude that they were relevant to the issue of defendant’s control over the premises); Commonwealth v. Young, supra. Here the notebook had defendant’s name written on its cover. This is strong evidence of defendant’s control over the bedroom area searched by police. Accordingly, the blue notebook will not be suppressed.

ORDER

For the foregoing reasons, it is hereby ORDERED that defendant’s motion to suppress evidence is DENIED.

 The Supreme Court held that inadvertence is not required during a “plain view” seizure in Horton v. California, 496 U.S. 128 (1990). Massachusetts, however, still requires an inadvertent discovery. Commonwealth v. D'Amour, supra; Commonwealth v. Accaputo, supra.